**Joshua M. Sasaki, P.C.**, OSB No. 964182
josh.sasaki@millernash.com
**Steven G. Liday**, OSB No. 075975
steven.liday@millernash.com
**Christopher J. Riley**, OSB No. 211614
christopher.riley@millernash.com
MILLER NASH LLP
US Bancorp Tower
111 SW Fifth Ave, Ste 3400
Portland, OR 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

        Attorneys for Plaintiffs
        State of Montana; Western Energy Alliance;
        Pacific Propane Gas Association; Idaho
        Petroleum Marketers and Convenience Store
        Association, Inc.; and Christensen, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| STATE OF MONTANA; WESTERN ENERGY ALLIANCE, a Colorado nonprofit corporation; PACIFIC PROPANE GAS ASSOCIATION, a Washington nonprofit corporation; IDAHO PETROLEUM MARKETERS AND CONVENIENCE STORE ASSOCIATION, INC., an Idaho nonprofit corporation; and CHRISTENSEN, INC., a Washington Corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF PORTLAND,<br><br>        Defendant. | CASE No. 3:23-cv-00219-YY<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STAY PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Page 1 -   **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STAY PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.      INTRODUCTION

Concurrent consideration of the City's motion to dismiss and plaintiffs' motion for partial summary judgment will save time and judicial resources. The motion for partial summary judgment requires the Court to consider two topics: (1) plaintiffs' standing, and (2) the application of the dormant Commerce Clause to the legislation challenged in this action. These two topics are already at issue in the City's motion to dismiss. Although overlapping, the topics are subject to different standards in the two motions. Thus, the Court's decision on the motion to dismiss is unlikely to resolve the motion for partial summary judgment. In such circumstances, defendant's proposed consecutive consideration of the motions will result in unnecessary, duplicative proceedings, as well as further delay of the resolution of the case in general.

Concurrent review of the motions is especially appropriate because the City's motion to dismiss can be denied with limited consideration. As discussed in plaintiffs' response to the City's motion to dismiss and below, plaintiff Christensen, Inc., and members of other organizational plaintiffs own properties within Portland that are facially subject to the zoning amendments at issue. Under Ninth Circuit and United States Supreme Court precedent, that alone is sufficient to satisfy the standing requirement for all parties.

Likewise, the City's Rule 12(b)(6) motion falls well short of the high standard for dismissal of an action at this preliminary stage. The motion primarily attacks the truth of the allegations in the amended complaint rather than their sufficiency for pleading plaintiffs' claims for relief. When the correct standard is applied—i.e., the allegations are taken as true and construed in the might most favorable to plaintiffs—there is no doubt that the amended complaint is sufficient to support each of plaintiffs' claims for relief.

Proceeding with the overlapping motions in normal course will not create an undue burden for the City. Most of the matters raised in plaintiffs' motion for partial summary judgment are already addressed in the City's motion to dismiss. Moreover, the Court paused the time for the City's response to the motion for partial summary judgment during consideration of this motion to stay.

The Rules allow parties to seek summary judgment at any time following commencement of the action, which advances the overarching purpose of the Rules, "to secure the just, speedy and inexpensive determination of every action." Fed. R. Civ. P. 1, 56. The City has not provided adequate justification to alter plaintiffs' right to obtain an early and efficient resolution of the action through this process, which would have the effect of narrowing the issues before the Court and perhaps resolving the case altogether. Accordingly, plaintiffs request that the Court deny the motion to stay and allow plaintiffs' motion for partial summary judgment to continue in normal course, which will allow the efficient concurrent resolution of both motions in a single process.

## II.    PROCEDURAL BACKGROUND

Plaintiffs commenced this action on February 14, 2023, asserting facial challenges to the City's Fossil Fuel Terminal Zoning Amendments (the "Amendments"), as well as two underlying City resolutions. ECF 1. To deter unnecessary motion practice, plaintiffs' complaint included 34 pages of detailed factual allegations, as well as citations to the key law underlying their claims for relief. *Id*.

Nevertheless, on March 14, 2023, counsel for the City informed plaintiffs that the City was broadly "considering moving to dismiss the complaint on standing grounds, based on a

lack of allegations sufficient to show injury to the plaintiffs." ECF 40, ¶ 2. Following conferral,

plaintiffs agreed to amend the complaint to set out additional allegations expounding on the

consequences of the Amendments and their specific impact on plaintiffs and their

members/constituents. ECF 40, ¶ 3. On May 10, 2023, plaintiffs filed their amended complaint

that included 19 additional pages of detailed factual allegations—with citations to the

governmental sources of the information—describing the wide-ranging impacts of the

Amendments and the resulting injuries to plaintiffs and the parties they represent. ECF 11.

   Shortly thereafter, the City requested that plaintiffs consent to a 44-day extension

of the City's deadline to respond to the amended complaint. ECF 40, ¶ 4. Plaintiffs agreed, and

on May 18, 2023, the City filed its motion for extension of time and stay of all discovery and

pretrial deadlines. ECF 12. The Court granted the motion the following day. ECF 13.

   On June 29, 2023, the City informed plaintiffs that they planned to file a motion

to dismiss and requested a meeting to confer thereon. ECF 40, ¶ 5. The following day, plaintiffs

informed the City that plaintiffs would file a motion for partial summary judgment in

conjunction with their response to the motion to dismiss. ECF 40, ¶ 6. The parties conferred on

both motions during a call on July 5, 2023. ECF 40, ¶ 6.

   On July 7, 2023, the City filed its motion to dismiss the amended complaint for

lack of standing and failure to state a claim, along with two declarations and fourteen exhibits

totaling over 950 pages. ECF 17; ECF 18; ECF 19.

   A few days later, counsel for the parties conferred on an extended schedule for the

response and reply briefs. ECF 40, ¶ 7. Plaintiffs again informed the City that they would be

filing a motion for partial summary judgment concurrently with their response to the motion to

dismiss, and thus proposed an extension of time for the City's response thereto. ECF 40, ¶ 7. The City declined, however, stating its preference to discuss the briefing schedule for the motion for partial summary judgment once the motion was filed. ECF 40, ¶ 7. On July 14, the parties filed a joint motion for an extension of time for the briefing on the motion to dismiss, which the Court granted on July 17, 2023. ECF 24; ECF 25.

On August 8, 2023, plaintiffs filed their response to the City's motion to dismiss, along with three declarations and 39 exhibits providing additional details and factual support for the allegations in their amended complaint. ECF 30; ECF 31; ECF 32; ECF 33. Plaintiffs also filed their motion for partial summary judgment on their first claim: that the Amendments and two underlying resolutions violate the dormant Commerce Clause because they discriminate against interstate commerce on their face, in effect, and in their purpose. ECF 34.

On August 17, the City filed its motion to stay plaintiffs' motion for partial summary judgment pending the Court's decision on the City's motion to dismiss. ECF 37. The same day, the Court issued an order suspending the City's response to the motion for partial summary judgment until resolution of the motion to stay. ECF 38.

## III.    MEMORANDUM OF LAW

### A.    Applicable standards.

Under the Federal Rules, "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b).

"A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). These powers are "governed

not by rule or statute but by the control necessarily vested in courts to manage their own affairs

so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*,

370 U.S. 626, 630–31 (1962). "Because of their very potency, inherent powers must be exercised

with restraint and discretion." Further, in exercising its inherent authority and power under the

federal rules, courts have an "affirmative duty * * * to ensure that civil litigation is resolved not

only fairly, but also without undue cost or delay." Fed. R. Civ. P. 1; Advisory Committee Notes

for 1993 Amendments.

**B.    Concurrent consideration of the City's motion to dismiss and plaintiffs' motion of partial summary judgment will save time and resources.**

Concurrent consideration of the motion to dismiss and motion for partial

summary judgment in normal course will conserve judicial resources because of the extent of the

overlapping issues. This is why plaintiffs filed their motion for partial summary judgment in

conjunction with their response to the City's motion to dismiss. If the parties are already

expending the resources to address standing and the application of the dormant Commerce

Clause in the City's motion to dismiss, it makes sense to consider those same issues through the

"more robust procedural device" of summary judgment that allows for potential final resolution

of the issues. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1059 (9th Cir. 2023) (discussing the

benefits of a motion for summary judgment compared to a motion to dismiss).

**1.    Addressing plaintiffs' standing under both the motion to dismiss and summary judgment standards will save judicial resources.**

In its motion to dismiss, the City claims that the Court lacks subject-matter

jurisdiction because plaintiffs do not have standing to bring this lawsuit. ECF 17. The motion's

central theme is that the Amendments will not accomplish their expressly stated goal of blocking increased transportation of fossil fuel through the City—or otherwise have any real impact.

The City brought a "factual attack" to plaintiffs' standing. A factual attack is not allowed, however, because the facts related to plaintiffs' standing also go to the merits of the case. In these circumstances, the Court must treat the motion as a challenge to the pleadings and assume the truth of the allegations therein. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

Apart from the City's motion to dismiss, courts must resolve challenges to their subject-matter jurisdiction, including standing issues, prior to granting a motion for summary judgment. At the summary judgment phase, however, plaintiffs cannot rely solely on their allegations but must submit evidence to affirmatively show their standing to bring the action. *Department of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 329 (1999).

For this reason, plaintiffs submitted substantial evidence in support of their response to the City's motion to dismiss—including three declarations and over 2,000 pages of selected exhibits—to conclusively establish plaintiffs' standing. While plaintiffs can defeat the City's motion to dismiss for lack of standing relying entirely on the allegations in their amended complaint, plaintiffs recognized that it would be more efficient to ask the Court to resolve this issue once and for all and thus submitted this evidence in conjunction with their motion for partial summary judgment.

Staying the motion for partial summary judgment could undo the benefits of this efficient approach. If the Court denies the City's challenge to plaintiffs' standing pursuant to only the facial standard that applies to the City's motion to dismiss (i.e., assuming the truth of the

allegations), the dispute over standing would need to again be resolved under the higher

summary judgment standard when the Court lifts the stay and proceeds to plaintiffs' motion.

> **2.     The City's Rule 12(b)(6) challenge to plaintiffs' first claim for relief
> and plaintiffs' motion for partial summary judgment ask the Court to
> address many identical issues.**

The substantive dormant Commerce Clause issues raised in plaintiffs' motion for

partial summary judgment are already at issue in the City's motion to dismiss. The City spends

12 pages of its motion to dismiss attacking plaintiffs' first claim for relief: that the Amendments

and underlying policies violate the dormant Commerce Clause because they discriminate

interstate commerce. ECF 17 at 11, 33–44. The arguments advanced by the City concern the

same issues raised in plaintiffs' motion for partial summary judgment, including:

- **Scope and general operation of the dormant Commerce Clause.** Plaintiffs'

  motion for partial summary judgment demonstrates that an ordinance is

  unconstitutional if it discriminates against interstate commerce on its face, in its

  effect, or in its purpose. ECF 34 at 12–13. Conversely, the City argues that the

  dormant Commerce Clause is nearly a "dead letter" that, in modern precedent,

  essentially applies to only those laws that facially discriminate against out-of-state

  business to protect their in-state counterparts. ECF 17 at 34, 37–38, 40.

- **Application of the dormant Commerce Clause to matters of local concern.**

  Plaintiffs outline in their motion for partial summary judgment the numerous

  cases invalidating regulations concerning matters of local concern, without special

  deference, including land use/development restrictions. ECF 34 at 19, 20–24. On

  that point, the City argues in its motion to dismiss that matters of local concern

are subject to special deference under dormant Commerce Clause precedent. ECF 17 at 36–37.

- **Whether the Amendments are facially discriminatory.** Plaintiffs set out in their motion for partial summary judgment how the Amendments' exceptions for facilities that transport/store for fuel used by local firms and consumers, as well as allowance for additional fuel to meet Portland's fuel standards, are facially discriminatory. ECF 34 at 14–17. The City argues in its motion to dismiss that these provisions do not constitute facial discrimination. ECF 17 at 42–44.

- **Existence of substantially similar in-state and out-of-state entities that are subject to different treatment under the Amendments.** In their motion for partial summary judgment, plaintiffs describe in detail the multiple types of out-of-state fuel users that the Amendments discriminate against, in favor of their substantially similar in-state counterparts. ECF 34 at 14–17. The City argues, however, that there are no substantially similar in-state and out-of-state entities that are subject to different treatment by the Amendments. ECF 17 at 35, 43.

- **Whether the Amendments have a discriminatory purpose.** Plaintiffs' motion for partial summary judgment describes the many findings, code commentary, and public testimony by City officials expressly stating that the purpose of the Amendments is to block new fuel terminals that would transport fuel out of the country/region—and that the underlying binding City policies mandated this discriminatory purpose. ECF 34 at 26–30. Conversely, the City argues in its motion to dismiss that the Amendments' sole purpose is to protect public health

Page 9 -   **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STAY PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

and safety in Portland, ECF 17 at 11, and that the City's discriminatory statements

to the contrary are somehow insufficient to establish a violation of the dormant

Commerce Clause, ECF 17 at 42–43.

- **The operative effect of the binding policies underlying the Amendments and whether they can be invalidated under the dormant Commerce Clause.**

  Plaintiffs explain in their motion for partial summary judgment how the policies

  adopted by the City in 2015 and 2016—to oppose all new fossil-fuel

  infrastructure unless it serves local end user and to limit fossil-fuel infrastructure

  to the amount necessary to serve the region—are not aspirational, but binding

  regulations with actual discriminatory effects. ECF 34 at 31–32. The City claims

  in its motion to dismiss that these policies are merely "general statements of the

  City's overall planning goals." ECF 17 at 12.

  Moreover, because of the detailed nature of plaintiffs' complaint and the lack of

genuine dispute over materials facts, the Court's resolution of the City's motion to dismiss and

plaintiffs' motion for partial summary judgment will require the Court to address the same body

of undisputed facts.

Given this extensive overlap in both the law and relevant facts, proceeding with

both motions concurrently will save time and judicial resources. Because the motions are subject

to different standards, the Court's findings in denying the City's motion to dismiss will not

resolve the motion for partial summary judgment—thus, requiring duplicative proceedings and

analysis.

**C.     There is no reason to delay plaintiffs' motion for partial summary judgment because the City's motion to dismiss should be summarily denied.**

Because the City's motion to dismiss does not come close to meeting the high standards for dismissal of a case at the preliminary stage, pausing briefing of the motion for partial summary judgment will not save the Court's resources.

**1.     Indisputable law and facts establish plaintiffs' standing—and even if they did not, the City's motion still fails because the facts related to standing also go to the merits of the case.**

To succeed on the Rule 12(b)(1) component of its motion to dismiss, the City must show that no plaintiffs nor any member of a plaintiff association has standing. This is because only one plaintiff is required to have standing under the "one plaintiff rule," and an association has standing if even one of its members would have standing to bring the suit on its own. *Association des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1120 (9th Cir. 2022); *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996).[1] As described in plaintiffs' response to the motion to dismiss, the City falls short of making such a showing. ECF 30 at 12 et seq.

In fact, the Court can resolve the issue of standing by simply finding that Christensen's terminal is facially subject to the Amendments. Likewise, recognizing that one other member of the Pacific Propane Gas Association and two members of the Western Energy Alliance own properties that are restricted by the Amendments would also resolve the issue. Under well-established Ninth Circuit precedent, the Amendments' potential application to these

---

[1] There are two other prongs for associational standing, but as described in plaintiffs' response to the motion to dismiss, those have not been challenged by the City.

properties is sufficient to establish standing for each of these plaintiffs. *Santa Rosa Band of Indians v. Kings Cty.*, 532 F.2d 655, 657 n.1 (9th Cir. 1975) ("the very existence of the Ordinance," even without threat of enforcement, is sufficient to establish standing); *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 386 (1926) (zoning ordinance restricting use of property was a present invasion of property rights sufficient to establish justiciability); *Columbia Gorge United-Protecting People & Prop. v. Yeutter*, No. CV 88-1319-PA, 1990 WL 357613, at *4 (D. Or. May 23, 1990), *aff'd sub nom.* 960 F.2d 110 (9th Cir. 1992) (association of owners of property within Columbia River Gorge National Scenic Area had standing to challenge regulations because of potential interference with members' right to use and develop property).

This is true regardless of the current or planned operations of the owners because the reduction in the possible future uses of property and corresponding adverse impact on the value and marketability of property are sufficient to establish standing. *Construction Indus. Ass'n of Sonoma Cty. v. City of Petaluma*, 522 F.2d 897 (9th Cir. 1975) (agreeing with plaintiffs that zoning plan that restricted the number of houses that could be built in the city "operated, of itself, to adversely affect the value and marketability of their land for residential uses," and thus establish plaintiffs' standing); *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 900 (9th Cir. 2011) (regulations facially restricting use of property sufficient to establish standing; recognizing "commonsense assessment of the market for real property" that regulatory restrictions on a property limiting the allowed uses lowers the property's value); *von Kerssenbrock-Praschma v. Saunders*, 48 F.3d 323, 326 (8th Cir. 1995) ("In zoning cases, as here, some restriction removes a 'stick' from the property owner's 'bundle' of rights. There is a

substantial body of law recognizing that the owner of an interest in the affected property has standing to challenge the restriction.").

Plaintiffs also established their standing through voluminous factual support showing that the Amendments will operate as the City stated they would, i.e., blocking new export terminals and restricting the flow of fossil fuels through the City. This evidence is more than sufficient to establish the low threshold for a market-based injury to establish standing—that there is a "'credible threat' that a probabilistic harm will materialize." *Natural Res. Def. Council v. U.S. E.P.A.*, 735 F.3d 873, 878 (9th Cir. 2013); *see Clinton v. City of New York*, 524 U.S. 417, 433 (1998) (recognizing that "the Court routinely recognizes probable economic injury resulting from governmental actions that alter competitive conditions as sufficient to satisfy the Article III 'injury-in-fact' requirement." (quoting 3 K. Davis & R. Pierce, Administrative Law Treatise 13–14 (3d ed. 1994) (quotation marks and brackets omitted); *Bryant v. Yellen,* 447 U.S. 352, 366–68 (1980) (standing for farmworkers where third parties' loss of irrigation rights could motivate those third parties to sell farmland and lower prices, which farmworkers might be able to purchase); *International Bhd. of Teamsters v. U.S. Dep't of Transportation*, 861 F.3d 944, 950–51 (9th Cir. 2017) (finding sufficient injury to truck drivers to challenge grant of permits to Mexico-based truck drivers because of likely increased competition from those drivers).

Moreover, even if plaintiffs did not own properties impacted by the Amendments and had not submitted evidence demonstrating a credible threat of "a probabilistic harm," the City's motion to dismiss would still fail because the fact issues related to standing go to the merits of plaintiffs' claims. *See* ECF 30 at 14. In such cases, courts must assume the truth of the

allegations in the complaint and resolve any fact disputes in plaintiff's favor. *Warren*, 328 F.3d at 1139; *Roberts*, 812 F.2d at 1177. Thus, "[a]s a general rule, when '[t]he question of jurisdiction and the merits of [the] action are intertwined,' dismissal for lack of subject matter jurisdiction is improper." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean, Geological Formation*, 524 F.3d 1090, 1094 (9th Cir. 2008) (quoting *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004)).

In short, the best the City can accomplish at this preliminary stage is to delay resolution of standing issues until there is a decision on the merits. Even a delay is not possible, however, because the factual record and case law conclusively establish plaintiffs' standing.

### 2.    The City' Rule 12(b)(6) challenge is also patently untenable.

Motions to dismiss for failure to state a claim are subject to a very high standard. Such a motion can only be granted when there is no cognizable legal theory to support the claim or when the complaint lacks allegations to support a facially plausible claim for relief. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015). Moreover, the allegations are taken as true and must be construed in the light most favorable to the plaintiffs. *Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003).

In its motion, the City spends little time discussing the allegations in plaintiffs' amended complaint or how they fail to meet the low bar to avoid dismissal. Rather, the City's brief resembles a motion for summary judgment attacking the purported lack of proof for plaintiffs' allegations and arguing why the Court should adopt its view of the law.

///

Page 14 -   **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STAY PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

For example, more than half the City's Rule 12(b)(6) briefing is dedicated to plaintiffs' first claim for relief: that the Amendments and underlying polices violate the dormant Commerce Clause because they discriminate against interstate commerce. ECF 17 at 34–44. Not once does the City claim there "is no cognizable legal theory" or "facially plausible claim for relief." Instead, the City argues that the Court should adopt its construction of the facts[2] and its overarching interpretation of dormant Commerce Clause precedent.[3] This is not the applicable standard for a Rule 12(b)(6) motion, which the City does not come close to satisfying. Moreover, the misplaced focus of the City's briefing demonstrates why it is efficient to resolve these issues concurrently through summary judgment—as well as the City's apparent wish to do so.

The City spends a total of eight pages of briefing on plaintiffs' four other claims. ECF 17 at 44–52. Again, the City does not scrutinize plaintiffs' allegations to show a lack of facially plausible claim, but instead disputes the accuracy of the allegations,[4] ignores the allegations that undermine its summary of the claims,[5] complains about the purported lack of

---

[2] E.g., ECF 17 at 42 (arguing that limiting fossil-fuel-transportation infrastructure to only that amount necessary to serve the region is merely "contemplating regional consumer needs in connection with a land-use decision."); ECF 17 at 43 (contesting, without discussing, the allegations that identify similarly situated entities); *Id.* (disputing, without identifying, the allegations of the operation and impacts of the Amendments); ECF 17 at 44 (arguing that contrary to the allegations—which the City does not discuss—the Amendments treat all private companies exactly the same).

[3] ECF 17 at 34–42.

[4] E.g., ECF 17 at 45 (contesting, without discussing, the detailed allegations in the amended complaint of the impacts/harm that the Amendments will have on the transportation of fossil fuel through the City); ECF 17 at 49 (despite the language in the legislation at issue expressly targeting infrastructure that could increase the transportation of oil by rail through the City—as quoted in the allegations—the City argues that the Amendments will not interfere with rail operations because existing terminals can increase throughput); ECF 17 at 51 (arguing that contrary to plaintiffs' allegations, the Amendments merely limit the size of fuel-storage tanks).

[5] E.g., ECF 17 at 52 (contending that plaintiffs only made conclusory statements about how the Amendments do not advance public welfare, without mentioning the allegations in the amended complaint describing how the

proof,[6] and urges the Court to adopt its construction of the purportedly applicable case law.[7] In an analogous case, the Northern District of California rejected a comparable motion in summary fashion. *Levin Richmond Terminal Corp. v. City of Richmond*, 482 F. Supp. 3d 944, 956–57 (N.D. Cal. 2020) (denying dismissal where dormant Commerce Clause claim required "a fact-specific inquiry reserved for a later stage of the case"). Likewise, here, the City's arguments are insufficient to meet the very high standard for dismissal of plaintiffs' claims at this preliminary stage.

> ### D.    Proceeding with plaintiffs' motion for partial summary judgment in the normal course will advance resolution of the first claim for relief, and possibly the entire case.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1).[8] As compared to a motion to dismiss, motions for summary judgment are a "more robust procedural device" that allow for "a prompt and efficient means of achieving a definitive resolution of a case-dispositive issue based on an evidentiary record that is focused on, and adequate for, that specific purpose." *Jones*,

---

Amendments prevent new, modern terminals and lock terminals within the highest-risk earthquake areas in the City). *See* ECF 11, ¶ 116.

[6] E.g., ECF 17 at 49 (arguing that "plaintiffs cannot show that the 2022 amendments have the facial effect of "managing or governing rail transportation" within the meaning of the ICCTA.").

[7] E.g., ECF 17 at 46–47 (arguing that the policy/purpose states in the several federal laws set out in the allegations for plaintiffs' Foreign Commerce Clause claim are not sufficient indications of congressional intent).

[8] Citing Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 467 (1984).

74 F.4th at 1059. For these reasons, a plaintiff may seek summary judgment at any time following commencement of the action. Fed. R. Civ. P. 56(b).

Plaintiffs' first claim for relief is unique from the others in that it can be resolved by the Court as a matter of law, prior to discovery. The other claims involve complex factual disputes over the impacts of the Amendments. Because all the claims seek the same relief, however, granting plaintiffs' motion for partial summary judgment could potentially resolve the entire case now. Fed. R. Civ. P. 54(b).

In these circumstances, there is even more reason to allow plaintiffs' motion for partial summary judgment to move ahead in usual course without unnecessary delay.

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs respectfully ask that this Court deny the City's motion to stay and proceed to review plaintiffs' motion for partial summary judgment concurrently with the City's motion to dismiss.

DATED this 31st day of August, 2023.

MILLER NASH LLP

*/s/ Joshua M. Sasaki*

Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
Steven G. Liday, OSB No. 075975
steven.liday@millernash.com
Christopher J. Riley, OSB No. 211614
christopher.riley@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Attorneys for Plaintiffs

4883-2626-1114.6

Page 17 -   **PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO STAY
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**