DENIS M. VANNIER, OSB No. 044406
Senior Deputy City Attorney
Denis.Vannier@portlandoregon.gov
NAOMI SHEFFIELD, OSB No. 170601
Senior Deputy City Attorney
Naomi.Sheffield@portlandoregon.gov
Portland City Attorney's Office
1221 SW Fourth Ave., Ste. 430
Portland, OR  97204
Telephone: 503.823.3047
Fax: 503.823.823.3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **STATE OF MONTANA; WESTERN ENERGY ALLIANCE**, a Colorado nonprofit corporation; **PACIFIC PROPANE GAS ASSOCIATION**, a Washington nonprofit corporation; **IDAHO PETROLEUM MARKETERS AND CONVENIENCE STORE ASSOCIATION, INC.**, an Idaho nonprofit corporation; and **CHRISTENSEN, INC.**, a Washington Corporation, | **3:23-cv-00219-YY**<br><br>**DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF FRCP 12(b)(1) AND 12(b)(6) MOTION TO DISMISS** |
| PLAINTIFFS, | |
| v. | |
| **CITY OF PORTLAND,** | |
| DEFENDANT. | |

# TABLE OF CONTENTS

I.      Introduction...................................................................................................1

II.     Plaintiffs have failed to present evidentiary support that any plaintiff has standing to
        obtain prospective relief...........................................................................1

        A.      Christiansen has provided no evidence that it was injured or faces any imminent
                injury from the 2022 amendments. ...................................................2

                1.      Generalized restrictions on Christiansen's property are insufficient to
                        demonstrate injury-in fact. ....................................................2

                2.      Christiansen has not presented evidence of lost property value. ................4

                3.      Christiansen offers speculation, rather than evidence, that the 2022
                        amendments will harm its business interests. ................................5

        B.      PPGA's standing fails for the same reasons as Christiansen. ...................9

        C.      IPM&CS cites no evidence that the 2022 amendments have or will imminently
                impact the supply or price of fuel. ....................................................9

        D.      Western Energy Alliance ("Alliance") fails to identify members or evidence of
                injury..........................................................................................10

        E.      Montana's alleged injury is based on hypothetical outcomes. ...............11

III.    Plaintiffs' responses to the City's FRCP 12(b)(6) motion to dismiss for failure to state a
        claim largely miss the mark, and the First Amended Complaint ("FAC") fails to state
        valid claims. ...............................................................................13

        A.      To state claims under Section 1983, each plaintiff must plead a plausible,
                cognizable harm to its rights under the relevant constitutional provision. ...........13

        B.      The FAC fails to state claims under the dormant Commerce Clause. ..................16

                1.      Plaintiffs do not plausibly allege an injury to their rights secured by the
                        dormant Commerce Clause...........................................................17

                2.      The 2022 amendments do not facially discriminate against plaintiffs in
                        violation of the dormant Commerce Clause. ................................19

                3.      The 2022 amendments do not cause "substantial harm" to interstate
                        commerce that is "clearly excessive" under the dormant Commerce Clause
                        and will provide an economic advantage to "substantially similar" Oregon
                        interests over plaintiffs...........................................................21

                4.      Plaintiffs' arguments in response ignore the problems with the FAC and
                        misunderstand what they must allege to state a claim under the dormant
                        Commerce Clause. ...................................................................23

        C.      The FAC fails to state a claim under the Foreign Commerce Clause...................28

                1.      Plaintiffs do not plausibly allege an injury to their rights secured by the
                        Foreign Commerce Clause...........................................................28

                2.      Plaintiffs cannot show that any congressional statute pertaining to foreign
                        commerce preempts the 2022 amendments. ................................29

Page  i –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO
             DISMISS

D.      The FAC fails to state a claim under the Interstate Commerce Commission
        Termination Act of 1995 ("ICCTA"). ...................................................................32

E.      Plaintiff's cursory substantive Due Process arguments fail to state a claim..........34

IV.   Conclusion ......................................................................................................................35

Page  ii –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO
              DISMISS

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air Transport Ass'n of Am., Inc. v. Jordan*,
2016 WL 9000276 (D. Or. May 30, 2016) ................................................................. 7

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
458 U.S. 592 (1982).................................................................................................... 11

*Am. Diabetes Ass'n v. U.S. Dept. of the Army*,
938 F.3d 938 (9th Cir. 2019) ....................................................................................... 2

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999)...................................................................................................... 14

*Ass'n of Am. Railroads v. South Coast Air Quality Mgmt.*,
622 F.3d 1094 (9th Cir. 2010) ................................................................................... 33

*Azul-Pacifico, Inc. v. City of Los Angeles*,
973 F.2d 704 (9th Cir.1992) ....................................................................................... 13

*Barnum Timber Co. v. U.S. E.P.A.*,
633 F.3d 894 (9th Cir. 2011) ....................................................................................... 5

*Bridenbaugh v. Freeman-Wilson*,
227 F.3d 848 (7th Cir. 2000) ....................................................................................... 7

*Bryant v. Yellen*,
447 U.S. 352 (1980)...................................................................................................... 8

*Cent. Arizona Water Conservation Dist. v. U.S. E.P.A.*,
990 F.2d 1531 (9th Cir. 1993) ..................................................................................... 7

*City & Cty. Of San Francisco v. Whitaker*,
357 F. Supp. 3d 931 (N.D. Cal. 2018) ........................................................................ 5

*City of Los Angeles v. Cty. of Kern*,
581 F.3d 841 (9th Cir. 2009) ................................................................................ 14, 19

*City of Philadelphia v. New Jersey*,
437 U.S. 617 (1978).................................................................................................... 23

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

*Clinton v. City of New York*,
   524 U.S. 417 (1998) ................................................................................ 6

*Coal. for Competitive Elec., Dynegy Inc. v. Zibelman*,
   272 F. Supp. 3d 554 (S.D.N.Y. 2017) .................................................... 15

*Columbia Gorge United-Protecting People and property v. Yeutter*,
   1990 WL 357613 (D. Or. May 23, 1990) ................................................ 3

*Dennis v. Higgins*,
   498 U.S. 439 (1991) .............................................................................. 14

*FERC v. Mississippi*,
   456 U.S. 742 (1982) .............................................................................. 30

*Freeman v. Corzine*,
   629 F.3d 146 (3d Cir. 2010) .................................................................... 6

*Friends of Ferrell Parkway, LLC v. Stasko*,
   282 F.3d 315 (4th Cir. 2002) .................................................................. 8

*Gen. Motors Corp. v. Tracy*,
   519 U.S. 278 (1997) ................................................................... 20, 22, 25

*Geyser v. United States*,
   2018 WL 6990808 (C.D. Cal. Aug. 30, 2018) ...................................... 15

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002) .............................................................................. 13

*Halverson v. Skagit Cty.*,
   42 F.3d 1257 (9th Cir. 1994) ................................................................ 34

*Heffernan v. City of Paterson*, N.J.,
   578 U.S. 266 (2016) .............................................................................. 16

*Hess* v. *Port Auth. Trans-Hudson Corp.*,
   513 U.S. 30 (1994) ................................................................................ 30

*HomeAway Inc. v. City & Cty. of San Francisco*,
   2015 WL 367121 (N.D. Cal. Jan. 27, 2015) ......................................... 15

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018) ................................................................ 8

Page  iv –     DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO
                DISMISS

*Individuals for Responsible Gov't, Inc. v. Washoe Cty. Ex rel. Bd. of Cty. Comm'rs*,
  110 F.3d 699 (9th Cir. 1997) ............................................................. 16

*Int'l Bhd. Of Teamsters v. U.S. Dep't of Transportation*,
  861 F.3d 944 (9th Cir. 2017) .............................................................. 6

*Johnson v. Brown*,
  567 F. Supp. 3d 1230 (D. Or. 2021) .................................................. 35

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) ............................................................ 2

*Levin Richmond Terminal Corp. v. City of Richmond*,
  482 F. Supp. 3d. 944 (N.D. Cal. 2020) ............................................. 31

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) .......................................................................... 14

*Lighthouse Resources Inc. v. Inslee*,
  2018 WL 6505372 (W.D. Wash. Dec. 11, 2018) .............................. 33

*Maher Terminals, LLC v. Port Auth. of New York & New Jersey*,
  805 F.3d 98 (3d Cir. 2015) ................................................................ 15

*Meland v. Weber*,
  2 F.4th 838 (9th Cir. 2021) ............................................................... 13

*Missouri ex rel. Koster v. Harris*,
  847 F.3d 646 (9th Cir. 2017) ............................................................ 11

*N.Y. & Atl. Ry. v. STB*,
  635 F.3d 66 (2d Cir. 2011) ................................................................ 33

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
  682 F.3d 1144 (9th Cir. 2012) .......................................................... 27

*Nat'l Council of La Raza v. Cegavske*,
  800 F.3d 1032 (2015) ........................................................................ 10

*Nat'l Pork Producers Council v. Ross*,
  6 F.4th 1021 (9th Cir. 2021) ............................................................. 16

*Park Pet Shop, Inc. v. City of Chicago*,
  872 F.3d 495 (7th Cir. 2017) ............................................................ 22

Page  v –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO
             DISMISS

*Resources Defense Council v. U.S. E.P.A.,*
   735 F.3d 873 (9th Cir. 2013) ........................................................................ 8

*Rosenblatt v. City of Santa Monica,*
   940 F.3d 439 (9th Cir. 2019) ...................................................................... 22

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) ...................................................................... 1

*Sarasota Wine Mkt. LLC v. Schmitt,*
   987 F.3d 1171 (8th Cir. 2021) ...................................................................... 6

*Shell Petroleum, N.V. v. Graves,*
   709 F.2d 593 (9th Cir.1983) ...................................................................... 10

*Sierra Club v. Trump,*
   929 F.3d 670 (9th Cir. 2019) ...................................................................... 15

*Spoklie v. Montana,*
   411 F.3d 1051 (9th Cir. 2005) .................................................................... 22

*Summers v. Earth Island Institute,*
   555 U.S. 488 (2009) .................................................................................... 10

*Tanner v. Hightower,*
   2016 WL 7974658 (C.D. Cal. Dec. 13, 2016) ........................................... 34

*Terenkian v. Republic of Iraq,*
   694 F.3d 1122 (9th Cir. 2012) ...................................................................... 2

*Tribe v. Cent. Arizona Water Conservation District.,*
   2019 WL 2058818 (D. Ariz. Mar. 31, 2019) ............................................... 7

*Turner v. City and Cty. of San Francisco,*
   788 F.3d 1206 (9th Cir. 2015) .................................................................... 18

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.,*
   550 U.S. 330 (2007) .................................................................................... 27

*Vill. Of Arlington Heights v. Metro. Housing Dev.,*
   429 U.S. 252 (1977) ...................................................................................... 3

*Village of Euclid, Ohio v. Ambler Realty Co.,*
   272 U.S. 365 (1926) ...................................................................................... 3

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

*von Kerssenbrock-Praschma v. Saunders*,
    48 F.3d 323 (8th Cir. 1995) ............................................................. 3

*Wardair Canada, Inc. v. Fla. Dep't of Revenue*,
    477 U.S. 1 (1986).......................................................................... 28

*Warth v. Seldin*,
    422 U.S. 490 (1975)....................................................................... 3

*West v. Kansas Nt. Gas Co.*,
    221 U.S. 229 (1911)...................................................................... 24

*Wyoming Sawmills Inc. v. U.S. Forest Service*,
    383 F.3d 1241 (10th Cir. 2004) ...................................................... 8

## Statutes

30 U.S.C. § 21a .............................................................................. 31, 32
42 U.S.C. § 13367 ........................................................................... 31, 32
42 U.S.C. § 1983 ............................................................................ passim
49 U.S.C. § 10501(b) ............................................................................ 33

## Rules

FRCP 12(b)(1) .................................................................................... 1
FRCP 12(b)(6) .......................................................................... 13, 22, 26

## City Code Provisions

PCC 33.920.030................................................................................4
PCC 33.920.300............................................................................4, 6

## Administrative Decisions

*Valero Refining Co.—Petition for Declaratory Order*,
    FD 36036, 2016 WL 5904757 (STB Sept. 20, 2016) ........................ 33

*SEA-3, Inc.—Petition for Declaratory Order*,
    FD 35853 (STB Mar. 17, 2015)....................................................... 33

*Washington & Idaho Railway—Petition for Declaratory Order*,
    FD 36017 (STB Mar. 17, 2017)....................................................... 33

Page  vii –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO
                   DISMISS

**REPLY**

## I.      Introduction

Plaintiffs fail to show that they are harmed or imminently will be harmed by the 2022 amendments and therefore lack standing to seek the entirely prospective relief that they request from this court. In fact, even the illusory and hypothetical harms that plaintiffs allege are not harms to the particular constitutional rights that they seek to vindicate. Each of their claims fail for this separate reason—plaintiffs have not alleged that they have suffered a violation of *their* constitutional rights or that they are a party with rights giving rise to ICCTA preemption. Finally, plaintiffs' allegations fail to state a claim under the relevant constitutional and statutory standards. For each—or any—of these three independent reasons, the court should grant the City's Motion to Dismiss ("City's Motion"). (ECF 17).

## II.     Plaintiffs have failed to present evidentiary support that any plaintiff has standing to obtain prospective relief.

Plaintiffs must show that they are currently or planning to imminently engage in an act that will be impacted by the 2022 amendments—they do not. They fail to present any evidence of plans to develop property in Portland inconsistent with the 2002 amendments or that the 2022 amendments have any impact the transportation of fossil fuels.

As an initial matter, plaintiffs misstate the standard of review for the City's FRCP 12(b)(1) Motion. First, plaintiffs assert that, even in a factual attack "the allegations in the complaint must be taken as true." (ECF 30 at 21[1]). This is incorrect. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). And, "[t]he court *need not* presume the truthfulness of the

---

[1] The City cites to the ECF page numbers throughout this Reply. Note that in some instances plaintiffs cite to the page numbers of the documents themselves, so page cites are different in certain instances.

Page  1 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

plaintiff's allegations." *Id* (emphasis added); *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (no presumptive truth to allegations during a factual attack on jurisdiction).

      Similarly, plaintiffs attempt to shift the burden on standing from themselves to the City. (ECF 30 at 19). This, again, is not correct. Rather, once the City made the motion to dismiss a factual attack on standing, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Safe Air for Everyone*, 373 F.3d 1035, at 1039.  Put another way, "plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, at 1121 (9th Cir. 2014).[2]

      Correctly applying these standards to the City's factual attack on plaintiffs' standing, after the City produced evidence undermining plaintiffs' factual allegations, plaintiffs have an affirmative burden to show, through evidence, that the court has subject matter jurisdiction. *Am. Diabetes Ass'n v. U.S. Dept. of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019) (citations and quotation marks omitted). Here, plaintiffs fail to present adequate evidence to meet their burden.

**A.**     ***Christiansen has provided no evidence that it was injured or faces any imminent injury from the 2022 amendments.***

      While Christiansen puts forth the most comprehensive arguments of any plaintiff in support of standing, it fails to offer evidence of any injury that is currently occurring, imminent, or even substantially likely to occur. Most notably, Christiansen fails to demonstrate that it has any plans to act in a manner that would be prohibited by the 2022 amendments.

*1.*     <u>*Generalized restrictions on Christiansen's property are insufficient to demonstrate injury-in-fact.*</u>

      While the parties dispute whether Christiansen Portland property is a BFFT under the 2022 amendments, the City does not dispute that the 2022 amendments generally impose

---

[2] Even where "jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Leite*, 749 F.3d at 1121-22.

Page  2 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

restrictions on hypothetical future uses of any property in Portland. However, generalized restrictions on the use of land, unrelated to any proposed or intended use of a particular parcel, are not sufficient to confer standing. Plaintiffs' cited cases do not say otherwise.

In *Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926), the Court did not find that a zoning ordinance that restricted property gave rise to standing. Rather, the Court found that the land in question was held for the "purpose of selling and developing it for industrial uses, for which it is especially adapted[,]" and the limitations on the use of the land caused a specific, identifiable reduction in market value. 272 U.S. at 384. The mere restriction on the use of land in the abstract was not the injury in *Village of Euclid*. Rather, the injury was a specific, identified, and calculated reduction in property value of land that the property owner intended to sell.

Similarly, in both *Columbia Gorge United v. Yeutter*, 1990 WL 357613 (D. Or. May 23, 1990) and *von Kerssenbrock-Praschma v. Saunders*, 48 F.3d 323 (8th Cir. 1995), the proposed restrictions impaired the plaintiffs' express, intended uses of their land. In *Columbia Gorge United*, property owners, some of whom were members of the association plaintiff, were denied requests for uses of their property. *See* 1990 WL 357613 at *4.  In *von Kerssenbrock-Praschma*, plaintiff, a father, was prohibited from transferring ownership of his farm to his sons—his intended use of the property. 48 F.3d at 324-25. In both of these cases, the challenged statutes interfered with plaintiffs' actual plans regarding use of their land.

"The plaintiff must show that he himself is injured by the challenged action of the defendant." *Vill. of Arlington Heights v. Metro. Housing Dev.*, 429 U.S. 252, 261 (1977). The mere fact that land is subject to zoning restrictions, as almost all land is, is not sufficient to challenge the restrictions. There must be some evidence of actual or imminent injury *to Christiansen* because of how it intends to use the land. *See Warth v. Seldin*, 422 U.S. 490, 516 (1975) (finding no standing where "complaint refers to no specific project of any of its members that is currently precluded either by the ordinance or by respondents' action in enforcing it[,]"

Page  3 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

explaining, "[i]n short, insofar as the complaint seeks prospective relief, Home Builders has failed to show the existence of any injury to its members of sufficient immediacy and ripeness to warrant judicial intervention.").

Plaintiffs spends three pages trying to connect the 2022 amendments to its current or proposed uses of Christiansen's property. Those arguments are unavailing. First, plaintiffs argue that Christiansen's property is currently a BFFT because it transloads propane from a train car to trucks via a direct transloading facility. (ECF 30 at 25). This assertion is inaccurate because Christiansen's site is not "primarily engaged in the transport and bulk storage of fossil fuels." PCC 33.920.300. Christiansen does not assert otherwise.[3]

Moreover, regardless of whether Christiansen's current operations meet the definition of a BFFT, Christiansen has failed to show that it is impacted by the 2022 amendments. If Christiansen's site is currently a BFFT, it could continue its current use. Christiansen has submitted evidence that it intends "to use at least *some*" of the 70 above-ground bulk storage tanks for fossil fuel storage when its contractual obligations expire in 2027. (ECF 32, ¶¶ 4-6). The 2022 amendments do not prohibit Christiansen from acting on those plans. The 70 above-ground bulk storage tanks have a total capacity of less than two million gallons—the storage amount that would trigger the 2022 amendments. PCC 33.920.300. Converting *some* of Christiansen's tanks to fossil fuel storage would not be prohibited by the 2022 amendments.

2. *Christiansen has not presented evidence of lost property value.*

Christiansen also asserts that it is harmed due to a reduction in property value. (ECF 30 at 29-32). But again this injury is unsupported by evidence. Christiansen points only to its own,

---

[3] Instead of providing evidence that Christiansen's facility is primarily engaged in the transport and bulk storage of fossil fuels, plaintiffs argue that one of the primary uses of the site must be transloading because transloading is not an accessory use. (ECF 30 at 28). This improperly reads the "primary engaged in" requirement in the definition of a BFFT, PCC 33.920.300, to mean a primary use, of which there can be more than one. PCC 33.920.030. There is no basis for this interpretation.

Page  4 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

unspecific assertion that the 2022 amendments "limit[] the businesses that would have interest in purchasing the property, and lowers the value of the property." (ECF 32, ¶ 13). Instead of offering any evidence of reduced property value, Christiansen asks the court to simply assume that the 2022 amendments reduce its property value. (ECF 30 at 31).

Plaintiffs' cited case does not support its position that, absent evidence, the court can determine how regulations impact property value. In that case, the court noted that the plaintiff "submitted two declarations by forestry experts, testifying to the property value reductions." *Barnum Timber Co. v. U.S. E.P.A.*, 633 F.3d 894, 898 (9th Cir. 2011). "[P]laintiffs cannot merely assert that the challenged action will cause economic harm without articulating a theory of harm that is not overly speculative." *City & Cty. of San Francisco v. Whitaker*, 357 F. Supp. 3d 931, 950 (N.D. Cal. 2018). Here, Christiansen's theory of economic harm from reduced property value is based on misunderstandings and generalized assumptions. There is no evidence that Christiansen's property value has been impacted by the 2022 amendments.

3.    *Christiansen offers speculation, rather than evidence, that the 2022 amendments will harm its business interests*.

Christiansen offers no evidence that the 2022 amendments will harm its business operations. Instead, plaintiffs' arguments rely on speculation and conjecture. Christiansen sells and distributes fuel products in the Portland region and eastern Oregon, eastern Washington, and western Idaho. (ECF 32, ¶¶ 14-15). Christiansen asserts that an inadequate supply of necessary fuel will result in it incurring substantially higher costs. (*Id*. at ¶ 16). Accepting all of this as true, conspicuously missing from the evidence of harm is any indication that there is an inadequate supply of fuel caused by the 2022 amendments.

Plaintiffs jump to the conclusion that limiting large storage terminals will create "at least a credible threat that there will be insufficient supply, and corresponding higher prices."[4] (ECF

---

[4] Plaintiffs also overstate the scope of the 2022 amendments as prohibiting any new marine terminals in Portland. (ECF 30 at 33). In fact, new terminals not exceeding two million gallons

Page  5 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

30 at 33). Plaintiffs base this conclusion on three assertions without any evidence.[5] (*Id.*). At bottom, plaintiffs present no evidence of any threat of supply shortages or price increases.

The cases that plaintiffs cite recognize that economic injury need not be shown with certainty; they do not stand for the proposition that the court can simply infer economic injury. *See Clinton v. City of New York*, 524 U.S. 417, 432 (1998) ( "critical facts identify the specificity and the importance of that [immediate] injury"). *Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 950-51 (9th Cir. 2017) (recognizing competitive injury for the purpose of standing, and concluding that newly permitted market participants made it competitively more difficult for existing market actors to profit). Here, the 2022 amendments do not introduce new competition, and they do not reduce capacity. In short, they do not alter the existing market *at all*. In fact, under the 2022 amendments, future expansion can occur, provided storage terminals remain under two million gallons.

Christiansen's blending arguments fail for the same reasons. The arguments are simply an unsupported assertion that, at some point in the future, there will be a blended fuel that Christiansen will seek to purchase and that this hypothetical fuel will not be available in Portland either in existing tanks or in a newly built tank allowed under the 2022 amendments. This is hypothetical injury, untethered to facts. None of the cases cited by plaintiffs support the proposition that standing exists where a plaintiff will potentially be deprived of an opportunity to purchase a hypothetical, unidentified product. *See Sarasota Wine Mkt. LLC v. Schmitt*, 987 F.3d 1171, 1178 (8th Cir. 2021) (plaintiffs were actually unable to purchase specific out of state wines); *Freeman v. Corzine*, 629 F.3d 146, 154-55 (3d Cir. 2010) (evidence that plaintiffs "have attempted to order wine shipments from at least five out-of-state wineries, each of which has

---

of storage capacity can be built. PCC 33.920.300.

[5] These assertions are (1) population growth in southwest Idaho, reduced production capacity at existing terminals, and termination of operations at existing terminals. (ECF 30 at 33).

Page  6 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO
             DISMISS

refused to make the shipments"); *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 849-50 (7th Cir. 2000) (before enactment of law, out of state vintners shipped to plaintiff, and they stopped when the law took effect).

Instead of presenting evidence that demand for fossil fuels exceeds capacity—an evidentiary burden held by plaintiffs, not the City—plaintiffs point to a legislative finding by the City that infrastructure projects for transport of fossil fuel have been proposed throughout the West Coast. (ECF 30 at 36). There is no evidence that this is a reference to proposed projects in Portland. And notably, it does not indicate that proposed projects would be prohibited by the 2022 amendments. The only concrete evidence of demand for development of new BFFTs in Portland is the Pembina project—a project not impacted by the 2022 amendments, but rather was prohibited by other provisions of City Code over six years prior.

Plaintiffs' final attempt to redirect the court from the absence of evidence of injury is to contend that the mere assertion of possible harm, dependent upon a whole host of independent actions, is sufficient to give rise to standing. (ECF 30 at 37-39). It is not. Plaintiffs' cited cases stand for the proposition that the role of intervening third parties does not, necessarily, defeat standing. In *Cent. Arizona Water Conservation Dist. v. U.S. E.P.A.*, 990 F.2d 1531 (9th Cir. 1993), the court considered the claims of a plaintiff who was contractually obligated to pay a third parties' costs related to defendant's actions. *Id.* at 1537-38. In cases without such direct economic obligation, courts have distinguished *Central Arizona*, and found that third parties, facing only possible and speculative economic impacts do not have standing. *See Air Transp. Ass'n of Am., Inc. v. Jordan*, 2016 WL 9000276, *6 (D. Or. May 30, 2016); *Tribe v. Cent. Ariz. Water Conservation Dist.*, 2019 WL 2058818, * 4 (D. Ariz. Mar. 31, 2019).

Plaintiffs summarize their position that any indirect harm must be caused by the 2022 amendments: "there can be no serious argument that energy companies are acting independently in not proposing terminal projects in Portland since 2016." (ECF 30 at 39). But, in fact, plaintiffs

Page  7 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

have offered absolutely no evidence of this incontrovertible truth. Pembina pursuing such a project nearly a decade ago, but being unable to do so for unrelated reasons, is not evidence.

Finally, plaintiffs' argument regarding a hypothetical future harm at some unknown and unknowable time is also insufficient for standing. In *Nat. Res. Def. Council v. U.S. E.P.A.*, 735 F.3d 873 (9th Cir. 2013), the court found a credible threat that plaintiff's members' children would be exposed to a chemical following an EPA authorization based on evidence of ubiquitous use and limited public information. *Id.* at 878; *see also In re Zappos.com, Inc.*, 888 F.3d 1020, 1027-28 (9th Cir. 2018) (involving claims by individuals whose data was actually stolen during a data breach, and whose data was now held by hackers who had commandeered the accounts of other individuals). These cases did not, as plaintiffs suggest, conclude that there is standing simply because something might happen to the plaintiff at some point. (ECF 30 at 39).

*Bryant v. Yellen*, 447 U.S. 352 (1980), is similarly unhelpful to demonstrate plaintiffs' standing. As another circuit court explained, *Bryant* does not stand "for the proposition that standing is established if the plaintiff seeks to bid for property that 'might become available.'" *Wyoming Sawmills Inc. v. U.S. Forest Service*, 383 F.3d 1241, 1249 (10th Cir. 2004). Instead, *Bryant* is an unusual and complicated set of facts, but its holding is limited to a situation where plaintiffs "sought to purchase lands that the Court held would 'likely' become available if the plaintiffs prevailed." *Id.*; *see also Friends of Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 325 (4th Cir. 2002) (distinguishing *Bryant* where "plaintiffs cannot demonstrate a likelihood of realizing their threatened 'opportunities' in the absence of the alleged threat.").

Here, plaintiffs provide no evidence that Christiansen is a potential purchaser of fuel that is unavailable, but likely would become available if the 2022 amendments were enjoined. In fact, there is no evidence of any shortage fuel storage capacity in Portland. Plaintiffs contend that an ordinance that, at most, maintains the status quo, with no evidence that the status quo is

Page  8 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

inadequate, creates a credible threat of "higher prices and product shortages." (ECF 30 at 40).

But absent *evidence* of any injury-in-fact to Christiansen, caused by the 2022 amendments, and

remedied by enjoining them, plaintiffs lack standing for the prospective relief they seek.

**B.    PPGA's standing fails for the same reasons as Christiansen.**

PPGA's standing arguments are largely based on Christiansen, and fail for the same

reasons. The additional reference to a property owned by a PPGA member, with no evidence of

the activity occurring on that property currently or the interests or plans of the member, is also

insufficient to demonstrate standing. (ECF 30 at 41-42).

PPGA's further argument regarding propane distributors and their injury from the 2022

amendments is no more based in evidence than Christiansen's argument. The evidence on which

PPGA bases its member's harm relates to disruption in flow from the Olympic pipeline, not

disruptions resulting from inadequate capacity in Portland terminals. (ECF 31-22 at 16). There is

no evidence of an existing, imminent, or even likely risk of inadequate storage caused by the

2022 amendments.

**C.    IPM&CS cites no evidence that the 2022 amendments have or will imminently impact the supply or price of fuel.**

IPM&CS argues standing based on the inaccurate assertion that the 2022 amendments

create a credible threat of restrictions on products available to members in the future. (ECF 30 at

44). The cited materials do not support IPM&CS's contentions.[6] Most notably, the cited evidence

does not support a conclusion that the there is an imminent or substantially likely supply

---

[6] For example, plaintiffs cite the U.S. Energy Information Administration *Midwest and Rocky Mountain Transportation Fuels Markets*, for the proposition that the Northwest Products pipeline system receives 10,000 b/d of fuel from barge-receiving terminals in Pasco, that is primarily sent to Idaho. (ECF 30 at 43). This citation is misleadingly incomplete. While 10,000 b/d of fuel in the Northwest Products pipeline originated from the barge-receiving terminal in Pasco, 62,000 b/d originated from Salt Lake City. (ECF 31-23 at 138). Also notable, 18,000 b/d from this pipeline was delivered to markets in Washington, not Idaho, well over the amount shipped by barge to Pasco. (*Id*.).

Page  9 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

shortage. Again, there is no injury-in-fact.

**D.    *Western Energy Alliance ("Alliance") fails to identify members or evidence of injury.***

The Alliance's argument for standing is premised on expressly withheld information. Their declaration asserts that their membership is not released publicly, so they identify no members who may be impacted by the 2022 amendments. (ECF 33 at ¶ 5). Instead, they rely on plaintiffs' counsel's review of the membership and determination that members may be impacted by the 2022 amendments. (ECF 33 at ¶¶ 6-7; ECF 31 at ¶¶ 41-42). But it is this court, not plaintiffs' counsel, who must evaluate the evidence to determine whether there is standing.

The Alliance does not identify a single member's name or identified interest related to the 2022 amendments. The Supreme Court has previously rejected this theory that an unidentified member possibly suffering harm is sufficient for associational standing. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-98 (2009) ("This novel approach to the law of organizational standing would make a mockery of our prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm.").[7]

The Alliance, at most, provides possible evidence that not a member, but a parent of a member,[8] owns a BFFT, with no apparent plans to change or expand its storage tank capacity. (ECF 30 at 44). In short, the Alliance has evidenced no injury to its member's parent. (ECF 31 at

---

[7] The Ninth Circuit has cabined the *Summers* decision, "[w]here it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury." *Nat'l Council of La Raza v. Cegavske,* 800 F.3d 1032, 1041 (9th Cir. 2015). Here, injury to Alliance members is speculative, not relatively clear. Knowing the injured members is necessary to respond to the injury.

[8] Plaintiff cites no case to support the conclusion that a subsidiary can sue on behalf of its parent. It cannot because the subsidiary lacks injury. *Cf. Shell Petroleum, N.V. v. Graves,* 709 F.2d 593, 595 (9th Cir. 1983) ("To have standing to maintain an action, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation. A shareholder must be injured directly and independently of the corporation." (citation omitted)).

Page  10 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO
DISMISS

¶ 42). The Alliance also points to an unidentified member, which has storage tanks that are not used for fossil fuels, and which is not a BFFT. (*Id*. at ¶ 43). Again, there is no evidence of injury-in-fact to this member or the Alliance.

Finally, the Alliance cites no evidence that its members have lost sales and profits from higher prices that could be obtained from overseas markets with unsatisfied demand. (ECF 30 at 45-46). Again, these unidentified members with their speculative losses related to unidentified overseas customers, and yet-to-be built overseas transport facilities, do not satisfy the requirements for standing.

**E.    *Montana's alleged injury is based on hypothetical outcomes.***

Montana's asserted standing is two-fold, but both depend on possible economic injury for which plaintiffs have presented no evidence. First, Montana asserts that it is harmed by lost tax revenue due to lost sales and profits from Montana extractors. Second, Montana asserts *parens patriae* standing on behalf of workers employed by those Montana extractors.[9]

Ultimately, both of Montana's standing theories rely on a conclusion that Montana oil-and gas-extraction companies have or will imminently suffer injury-in-fact caused by the 2022 amendments. But there is no evidence that the 2022 amendments have or will harm Montana extractors. There is no evidence of any disruption in the sale of crude oil from Montana since the 2022 amendments. There is no evidence of an imminent risk that Montana extractor's take-away capacity or sales will be impacted.

---

[9] The Ninth Circuit has already found that states do not have *parens patriae* standing to sue on behalf of harmed companies operating within the state. *See Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017). Here, Montana believes that businesses—extractors—operating in the state could be harmed. But to establish *parens patriae* standing, Montana "must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party.'" *Id*. (quoting *Alfred L. Snapp & Son, Inc. v. P.R. ex rel. Barez*, 458 U.S. 592, 607 (1982)). Here, Montana's interest on behalf of employees of private businesses is not an interest that is separate and apart from the interest of those same private businesses.

Page  11 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

Montana asserts that its businesses rely on transportation through Portland to reach Washington refineries. (ECF 30 at 49). But there is no evidence of the extent of this reliance. And plaintiffs do not counter the City's evidence that there are additional options for accessing these refineries. (*Id.*). Instead, Montana insists that the reliance on Portland's terminals, results in raised transportation costs. There is no evidence of this.

Notably, Montana fails to address the speculation that increased storage capacity in Portland is needed. The only alleged harm that Montana oil and gas extractors could have would be caused by demand for Portland terminal storage exceeding supply. Plaintiffs fail to present evidence that this is occurring or will occur imminently. Instead, they emphasize that the 2022 amendments would block future, possible, hypothetical projects. This is the definition of speculative. Plaintiffs are asking the court to conclude, without any evidence, that the demand for crude oil storage in Portland will exceed historic levels and existing capacity at the very time that people around the world are working to reduce, not increase, demand for these products.

Plaintiffs' capacity argument bleeds into its argument that third parties, not Montana or Montana extractors, could possibly, at some point in the future, want to build not just additional terminals in Portland, but terminals that are prohibited by the 2022 amendments. Plaintiffs have presented no evidence of any present intent to construct terminals.[10]

Plaintiffs have failed to present evidence that any plaintiff has suffered injury-in-fact caused by the 2022 amendments, redressable by enjoining the amendments. In short, plaintiffs have failed to meet their burden of demonstrating standing for prospective relief against the City, and the court should dismiss plaintiffs' claims.

///

---

[10] Plaintiffs' argument, that the City cannot pass an Ordinance designed to block products and then insist that plaintiffs do not have standing to challenge it is simply not correct. (ECF 30 at 50). Plaintiffs must have an injury-in-fact caused by the 2022 amendments regardless of the City's purpose in passing the 2022 amendments.

Page  12 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

**III.    Plaintiffs' responses to the City's FRCP 12(b)(6) motion to dismiss for failure to state a claim largely miss the mark, and the First Amended Complaint ("FAC") fails to state valid claims.**

Plaintiffs also argue that, in addition to meeting their burden of establishing this court's subject-matter jurisdiction, they have pleaded valid claims under the dormant Commerce Clause, the Foreign Commerce Clause, the Interstate Commerce Commission Termination Act of 1995, and the substantive Due Process Clause of the 14th Amendment. (*See* ECF 30 at 51-64). Plaintiffs are mistaken. The FAC fails to state claims under any of those theories.

**A.    *To state claims under Section 1983, each plaintiff must plead a plausible, cognizable harm to its rights under the relevant constitutional provision.***

Plaintiffs' first, second, third, and fourth claims for relief are all constitutional claims brought "pursuant to 42 U.S.C. § 1983" ("Section 1983"), a federal statute. (*See* ECF 11, ¶¶ 2, 11, 68-99, 111-118). This is because, as a general matter, a plaintiff "has no cause of action directly under the United States Constitution" but "must utilize 42 U.S.C. § 1983" to vindicate alleged constitutional violations. *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir.1992).

Section 1983 states that any person who has been "deprive[d] of any rights, privileges, or immunities secured by the Constitution" may bring "an action at law, suit in equity, or other proper proceeding for redress" in court. 42 U.S.C. § 1983. As pertinent to this case, that provision provides a cause of action to plaintiffs only if the City injured *their constitutional rights*—not if it harmed some third party's constitutional rights, or caused plaintiffs some harm untethered from a constitutional right. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) ("Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States. Accordingly, it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." (emphasis in original)); *Meland v. Weber*, 2 F.4th 838, 848 (9th Cir. 2021) (holding, in Section 1983 case, that a plaintiff must "allege[] that he has been personally injured by an

Page  13 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

allegedly unconstitutional law" and "cannot rest his claim to relief on the legal rights or interests of third parties.").

Therefore, to state a claim for relief under Section 1983, each plaintiff must point to an injury that falls within the relevant "zone of interests" protected by the law—that is, an injury to its constitutional rights. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (holding that "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked," and the "zone of interests" test "applies to all statutorily created causes of action"); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983," a plaintiff must plausibly allege that it was "deprived of a right secured by the Constitution or laws of the United States"); *see also Dennis v. Higgins*, 498 U.S. 439, 446-51 (1991) (petitioner brought valid Section 1983 claim under dormant Commerce Clause because it was "engaged in interstate commerce" and its rights were arguably within the "zone of interests" protected by the Clause).

Until recently, the "zone of interests" test for Section 1983 claims alleging constitutional violations was part of the doctrine of "prudential standing." *See City of Los Angeles v. Cty. of Kern*, 581 F.3d 841, 848 (9th Cir. 2009) (holding that "[f]inancial injury, standing alone, does not implicate the zone of interests protected by the dormant Commerce Clause," but the "financial injury must somehow be tied to a barrier imposed on interstate commerce."). However, in *Lexmark*, the Supreme Court noted that the phrase "prudential standing is a misnomer as applied to the zone-of-interests analysis," because that analysis is separate from the question of Article III standing. *See* 572 U.S. at 127, 127 n. 3, 128 n.4. Rather, the zone of interests "is an element of the cause of action under the statute," not a question of "subject-matter jurisdiction." *Id*. at 134 n. 6. Notably, the Court in *Lexmark* did not reject the "zone of interests" test or overrule its precedent applying it—quite the contrary. What the Court did, however, was disavow the *label* that had been attached to that test. *See id.* at 128 n. 4.

Page 14 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

Since *Lexmark*, the Ninth Circuit has reaffirmed several aspects of "prudential standing," *See Meland*, 2 F.4th 838, 847 n. 5 (9th Cir. 2021) (affirming continued validity of rule against basing Section 1983 claims on alleged injuries to the rights of third parties). And while it has expressed some doubt about the continued applicability of the "zone of interests" analysis to purely constitutional claims post-*Lexmark*, it nevertheless has continued to engage in that analysis. *See Sierra Club v. Trump*, 929 F.3d 670, 703 (9th Cir. 2019) (concluding that, "even if a zone of interests test applied here, it would be satisfied."). Courts within this circuit have similarly continued to apply the "zone of interests" test and other "prudential standing" rules to constitutional claims. *See Geyser v. United States*, 2018 WL 6990808, at *8 (C.D. Cal. Aug. 30, 2018) (explaining that, under *Lexmark*, "a plaintiff's complaint [must] fall within the zone of interests protected by the law invoked," including "claims brought under … the Constitution."); *HomeAway Inc. v. City & Cty. of San Francisco*, 2015 WL 367121, at *10 (N.D. Cal. Jan. 27, 2015) (rejecting dormant Commerce Clause claim because "HomeAway lacks [prudential] standing to assert that the Ordinance's purported discrimination against out-of-state property owners violates any cognizable right of HomeAway itself."). The same is true of courts in other circuits. *See, e.g., Maher Terminals, LLC v. Port Auth. of New York & New Jersey*, 805 F.3d 98, 108 (3d Cir. 2015) (holding, "to come within the Tonnage Clause's zone of interests, we hold that a plaintiff must allege an injury to a vessel as a vehicle of commerce."); *Coal. for Competitive Elec., Dynegy Inc. v. Zibelman*, 272 F. Supp. 3d 554, 581 (S.D.N.Y. 2017), *aff'd sub nom. Coal. for Competitive Elec., Dynergy Inc. v. Zibelman*, 906 F.3d 41 (2d Cir. 2018) ("The Supreme Court's reasoning that the zone of interests test is more logically a cause of action question applies equally to statutory and constitutional claims, and *Lexmark* did not reject the zone of interests test—it merely reclassified it."). Indeed, it does not appear that any federal circuit has rejected the "zone of interests" test as applied to Section 1983 claims alleging constitutional violations post-*Lexmark*.

Page 15 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

In sum, to state a valid constitutional claim under Section 1983, a plaintiff must plausibly allege that it was deprived of a right "secured by the Constitution." *Gonzaga Univ.*, 536 U.S. at 283; *see also Heffernan v. City of Paterson*, N.J., 578 U.S. 266, 271 (2016) (explaining that, because Section 1983 "authorizes a lawsuit" only a plaintiff was deprived of a "right … secured by the Constitution," the court must ask, "what precisely is that 'right?'" in the context of the case). This requires that a plaintiff's alleged injury be within the "zone of interests" covered by the law—that is, that the injury bear "more than a marginal relationship to the purposes underlying" the constitutional provision on which the Section 1983 claim is based. *Individuals for Responsible Gov't, Inc. v. Washoe Cty. Ex rel. Bd. of Cty. Comm'rs*, 110 F.3d 699, 703 (9th Cir. 1997) (concluding that the plaintiffs' alleged injury—needing "to pay for unnecessary and unwanted garbage services"—was "not even marginally related to the purposes underlying the dormant Commerce Clause."). As discussed below, plaintiffs have failed to allege injury to *their* rights, under the dormant Commerce Clause, the Foreign Commerce Clause, the Interstate Commerce Commission Termination Act of 1995, and the substantive Due Process Clause of the 14th Amendment.

**B.**      ***The FAC fails to state claims under the dormant Commerce Clause.***

As explained in the City's Motion, plaintiffs' FAC fails to state claims under the dormant Commerce Clause, whether "facially" (plaintiffs' first claim) or under the *Pike* test (plaintiffs' second claim). (*See* ECF 17 at 33–47). Nothing in plaintiffs' Response alters that reality.

As the Ninth Circuit recently noted, the dormant Commerce Clause is fast becoming "a dead letter" as a constitutional doctrine, and "a plaintiff's complaint is unlikely to survive a motion to dismiss" in all but the most extreme circumstances. *See Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1033 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023). The Supreme Court endorsed that view, emphasizing that "extreme caution is warranted before a court deploys [the] implied authority" of the dormant Commerce Clause, because invalidating "a democratically

Page  16 –      DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

adopted" law "in the name of the dormant Commerce Clause is a matter of extreme delicacy, something courts should do only where the infraction is clear." *Nat'l Pork Producers Council*, 598 U.S. at 390 (internal quotation marks and citations omitted).

1.    *Plaintiffs do not plausibly allege an injury to their rights secured by the dormant Commerce Clause.*

To state a Section 1983 claim under the dormant Commerce Clause, each plaintiff must plausibly allege that it has suffered an injury "tied to a barrier imposed on interstate commerce." *City of Los Angeles*, 581 F.3d at 848 n. 6 (9th Cir. 2009); *see also Individuals for Responsible Gov't, Inc.*, 110 F.3d at 703 (holding that "the zone of interests test also governs claims under the Constitution in general, and under the negative dormant Commerce Clause in particular." (citation, internal quotation marks, and brackets omitted)). Here, the FAC does not do so.

In *City of Los Angeles*, the plaintiffs were California recyclers who challenged a law banning the use of treated solid waste as fertilizer in Kern County. *See* 581 F.3d at 843–44 (9th Cir. 2009). The plaintiffs alleged that they "engage in interstate commerce," and that they would "be forced to pay higher fees to ship their waste to different sites, likely in Arizona," instead of California. *Id.* at 848. The district court found that the law violated the dormant Commerce Clause, holding that it "discriminated against interstate commerce in effect." *Id.* at 844. But the Ninth Circuit reversed, holding that the plaintiffs' alleged injury did not "bear more than a marginal relationship to the purposes underlying the dormant Commerce Clause." *Id.* at 847.

As the Ninth Circuit explained, "the chief purpose underlying [the dormant Commerce] Clause is to limit the power of States to erect barriers against interstate trade." *Id.* (quoting *Individuals for Responsible Gov't, Inc.*, 110 F.3d at 703). The court held that "[f]inancial injury, standing alone, does not implicate the zone of interests protected by the dormant Commerce Clause"—rather, the plaintiffs' alleged "financial injury must somehow be tied to a barrier imposed on interstate commerce." *Id.* at 848. There, however, the financial impact of the

Page  17 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

county's ban on recyclers would be similar whether they were in-state or out-of-state entities: both "would suffer the same injury (being forced to pay higher prices for biosolid disposal)" regardless of their state of citizenship or incorporation. *Id*. In short, nothing "links the financial injury [plaintiffs] allege in this case with an impediment to interstate commerce." *Id*. at 848 n. 6.

Here, the FAC alleges generally that plaintiffs "are and will continue to be irreparably harmed" because the City's land-use rules supposedly eventually "will throttle the transport of fossil fuel to and from other states and countries," cause "higher prices and fuel shortages," interfere with plaintiffs' future "ability to relocate, replace storage tanks, or build new tanks" in the City, will "result[] in a reduction of their properties' value," and prevent plaintiffs "from siting new fuel terminals within the City." (ECF 11, ¶¶ 81, 89). But those conclusory and generic allegations do not plausibly state a claim under the dormant Commerce Clause. *See Turner v. City and Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) ("To survive a rule 12(b)(6) motion to dismiss, a plaintiff must allege enough facts to state a claim to relief that is plausible on its face"—"conclusory allegations of law and unwarranted inferences are insufficient to avoid" dismissal). Quite simply, plaintiffs do not plausibly allege that they each have suffered an injury to their rights under the dormant Commerce Clause.

Thus, plaintiffs' claimed injury to their future "ability to relocate, replace storage tanks, or build new tanks" in the City, or to someday "sit[e] new fuel terminals within the City," is unsupported by any specific allegations of intent by each plaintiff to do any one of those things.[11] Moreover, those claimed injuries are not injuries to rights *secured by the dormant Commerce Clause*. Put differently, there is no constitutional right under the dormant Commerce Clause to

---

[11] For example, the State of Montana does not allege that it has any actual, present intent to relocate or build a fossil-fuel terminal in the City—nor, indeed, does any single plaintiff. As such, none of the six plaintiffs in this case properly alleges an injury to *its* rights, let alone its rights *under the dormant Commerce Clause*. Therefore, no plaintiff properly states a claim under that Clause. *See Meland*, 2 F.4th at 847.

Page  18 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

"build new tanks" or "sit[e] new fuel terminals within the City." There *is* a right to engage in interstate commerce free from *discriminatory* laws, but plaintiffs' allegations of harm do not allege that each plaintiff has suffered an injury "implicat[ing] the zone of interests protected by the dormant Commerce Clause" *City of Los Angeles*, 581 F.3d at 848; *see also Individuals for Responsible Gov't, Inc.,* 110 F.3d at 704 (plaintiffs' claimed injury—paying for unwanted services—was not "within the zone of interests to be protected" by dormant Commerce Clause).

The same is true of plaintiffs' allegation that the City's land-use laws will "result[] in a reduction of their properties' value[.]" (ECF 11, ¶¶ 81, 89). Even if that were true, the dormant Commerce Clause does not provide a constitutional right to the highest property value. *See Gonzaga Univ.* 536 U.S. at 283 (holding that, because "Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States[,] … it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." (emphasis in original)). Put differently, maximizing real-property values is not within the "zone of interests" protected by the dormant Commerce Clause. *See Individuals for Responsible Gov't, Inc.*, 110 F.3d at 703.

In sum, the FAC does not adequately allege, as to each plaintiff, a discrete and cognizable injury to *its* rights secured *by the dormant Commerce Clause*. Each plaintiff therefore fails to properly state a claim for denial of its constitutional rights under Section 1983. *See Meland*, 2 F.4th at 847. Nothing in plaintiffs' response to the City's Motion undermines that reality. This court should dismiss the first and second claims on that basis alone.

2.    <u>The 2022 amendments do not facially discriminate against plaintiffs in violation of the dormant Commerce Clause.</u>

Moreover, the first claim alleged in the FAC is that the 2022 amendments are "discriminatory" against plaintiffs in violation of the dormant Commerce Clause. (ECF 11, ¶¶ 68–82). But as explained in the City's Motion, to state a claim under the dormant Commerce

Page  19 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

Clause, plaintiffs must plausibly allege that the 2022 amendments discriminate against plaintiffs *as out-of-state entities*, to the economic benefit of "substantially similar" Oregon entities. (*See* ECF 17 at 42–44). This is because, as the Supreme Court has held repeatedly, "any notion of discrimination [under the dormant Commerce Clause] assumes a comparison of substantially similar entities." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997). And as the Court reaffirmed just months ago, the Court's "modern cases" stand for the proposition that "economic protectionism" is what the dormant Commerce Clause prohibits—nothing more. *See Nat'l Pork Producers Council*, 598 U.S. at 369-70 (further holding that, "absent discrimination, a State may exclude from its territory, or prohibit the sale therein of any articles which, in its judgment, fairly exercised, are prejudicial to the interests of its citizens."). Here, the FAC does not satisfy those elements.

Quite simply, the FAC does not adequately allege that the 2022 amendments provide an economic benefit to any "substantially similar" Oregon entity over plaintiffs. (*See* ECF 11, ¶¶ 62 –67, 91, 89) (allegations of impacts on plaintiffs). Thus, the State of Montana does not—indeed, cannot—plausibly allege that the State of Oregon will receive an economic advantage over Montana because of the 2022 amendments. Similarly, neither the Alliance, the PPGA, nor the IPM&CS identifies or alleges that any Oregon competitor "substantially similar" to its members will receive an economic advantage over those members because of the 2022 amendments. Finally, Christensen does not—and cannot—identify or allege that any Oregon competitor "substantially similar" to Christensen is favored by the 2022 amendments and will receive a competitive advantage over Christensen as a result.

In sum, as explained in the City's Motion, nothing in the FAC, even taken as true, shows that the 2022 amendments discriminate between plaintiffs and substantially similar Oregon entities, to the detriment of plaintiffs and the economic advantage of the Oregon entities. (*See* ECF 17 at 42–44). This court should therefore dismiss plaintiffs' first claim with prejudice.

Page  20 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO
              DISMISS

3.    *The 2022 amendments do not cause "substantial harm" to interstate commerce that is "clearly excessive" under the dormant Commerce Clause and will provide an economic advantage to "substantially similar" Oregon interests over plaintiffs.*

The second claim alleged in the FAC is that the 2022 amendments impose an "undue burden on interstate trade" in violation of the dormant Commerce Clause under the so-called *Pike* balancing test. (ECF 11, ¶¶ 83–90). But as explained in the City's Motion, the dormant Commerce Clause prohibits only *a specific kind* of burden. (*See* ECF 17 at 37–42). In *General Motors*, the Court explained that a plaintiff alleging an "undue burden" on interstate commerce had to point to "a local preference" between "supposedly favored and disfavored entities in a single market[.]" *See* 519 U.S. at 300. That is, the plaintiff must point to "a discriminatory burden" on interstate trade, not just any burden, however substantial. *Id.* at 299.

Most recently, in *Nat'l Pork Producers*, the Court reiterated that the purpose of the *Pike* "undue burden" test is to uncover the existence of a "hidden" protectionist motive—that is, an intent to favor in-state economic interests over similarly situated out-of-state economic interests. *See* 589 U.S. at 377, 379 (further explaining that "no clear line" separates the undue-burden *Pike* test "from our core antidiscrimination precedents," and that the *Pike* "undue burden test" is used to "disclose the presence of a discriminatory purpose" not apparent on the face of a law). Applying that analysis, the Court concluded that the plaintiffs in *Nat'l Pork Producers* failed to state a claim under the *Pike* test even though they alleged that California's law would create "a 'massive' disruption of the pork industry" nationwide. *Id.* at 382. As the Court explained, the plaintiffs "do not allege that California's law seeks to advantage in-state firms or disadvantage out-of-state rivals," and they "nowhere suggest that an examination of [the California law's] practical effects in operation would disclose purposeful discrimination against out-of-state businesses" versus their in-state competitors. *Id.* at 370, 379.[12]

---

[12] The Court noted that some of its older cases had previously left the "courtroom door open" to challenges premised on "even nondiscriminatory burdens," and that "a small number of our cases have invalidated state laws that appear to have been genuinely nondiscriminatory"—but the Court suggested that those decisions no longer fit with its focus on "economic protectionism."

Page  21 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

In sum, as the Ninth Circuit recently held in the context of an FRCP 12(b)(6) motion to dismiss, "*Pike* balancing is required only if the challenged law has a *discriminatory* effect on interstate commerce." *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019) (quoting *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 503 (7th Cir. 2017); emphasis added). Moreover, "conclusory allegations of disparate impact are not sufficient"—rather, "to survive the City's motion to dismiss, the plaintiffs needed to plead *specific facts* to support a plausible claim that the ordinance has a discriminatory effect on interstate commerce." *Id*. (quoting *Park Pet Shop*, 872 F.3d at 503; emphasis added). A complaint that fails to do so is subject to dismissal for failure to state a claim under the *Pike* balancing test. *Id*.

Here, as with their first claim, plaintiffs do not and cannot plausibly allege "specific facts" showing that the 2022 amendments impose a "discriminatory burden" on interstate commerce—let alone a "substantial harm to interstate commerce" that "is clearly excessive in relation to the putative local benefits" and favors "substantially similar" Oregon economic actors to the detriment of plaintiffs. *Gen. Motors Corp.*, 519 U.S. at 299; *Nat'l Pork Producers Council*, 598 U.S. at 384-85.

As the Ninth Circuit noted in *Rosenblatt*, "[l]and use regulations are inherently local." 940 F.3d at 452. As such, the court suggested, they almost never can be subject to a successful dormant Commerce Clause challenge under the *Pike* balancing test. *See id*. (explaining that local land-use regulations are "not a significant burden on interstate commerce merely because they disappoint [entities] from out of state."); *see also Spoklie v. Montana*, 411 F.3d 1051, 1059 (9th Cir. 2005) (holding, "That a particular service … appeals to out-of-staters, however, does not impose on states an obligation to permit it."). Here, the FAC does not and cannot plausibly allege

---

*See Nat'l Pork Producers Council*, 598 U.S. at 379 (citations and internal quotations marks omitted). The Court explained, that "line of cases … originated before *Pike*" and, further, "at least some decisions in this line might be viewed as condemning state laws that although neutral on their face" were enacted for the benefit of "in-state interests." *Id*. at 379 n. 2.

Page  22 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

that the 2022 amendments impose a significant *and discriminatory* burden on interstate commerce, which favors substantially similar Oregon economic interests to the detriment of any of the six plaintiffs. This court should dismiss plaintiffs' second claim for that reason alone. Moreover, as explained in the City's Motion, plaintiffs further fail to plausibly allege that any discriminatory harms from the 2022 amendments substantially outweigh the amendments' putative local benefits. (*See* ECF 17 at 45). Plaintiffs' second claim is subject to dismissal on that additional, independently sufficient basis. *See Rosenblatt*, 940 F.3d at 453 (dismissing complaint when it did not "adequately demonstrate how the alleged burden on interstate commerce would clearly exceed the stated benefits of the ordinance.").

4.    *Plaintiffs' arguments in response ignore the problems with the FAC and misunderstand what they must allege to state a claim under the dormant Commerce Clause.*

Plaintiffs' arguments in response simply ignore the Supreme Court's "modern cases," which the Court and the Ninth Circuit recently emphasized are the ones that govern the dormant Commerce Clause analysis today. *See Nat'l Pork Producers Council*, 598 U.S. at 369 (2023) ("In its 'modern' cases, this Court has said that the Commerce Clause prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." (cleaned up)). Indeed, plaintiffs do not even cite—let alone discuss—the *National Pork Producers* case, even though it is the Supreme Court's latest word on the dormant Commerce Clause. But ignoring contrary Supreme Court precedent will not make it go away.

In their Response, plaintiffs candidly concede that they "do not allege that the Amendments and underlying policies are meant to protect local industry." (ECF 30 at 52). But, plaintiffs argue, they don't need to. Exhuming two old cases—including one from over a century ago—plaintiffs assert that the dormant Commerce Clause does *not* require a showing of "discrimination between 'substantially similar' competitors." (ECF 30 at 54) (citing *City of*

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

*Philadelphia v. New Jersey*, 437 U.S. 617, 628 (1978) and *West v. Kansas Nat. Gas Co.*, 221 U.S. 229, 249 (1911)). Rather, plaintiffs suggest that it is sufficient to allege generally that a law would differentially affect "consumers/end users" in different states, or targets "wanted or unwanted commerce." Those arguments have no merit.

Quite simply, the cases plaintiffs cite for those propositions were both decided *before* the 1997 *General Motors* case, in which the Supreme Court expressly held for the first time that *any* dormant Commerce Clause claim—whether it alleges "express discrimination against interstate commerce or undue burden upon it"—must prove "a local preference" between "supposedly favored and disfavored entities in a single market[.]" 519 U.S. at 300. As the Court explained somewhat tongue-in-cheek in *General Motors*, that "central assumption has more often than not itself remained dormant in this Court's [prior] opinions," but the Court now expressly held that "any notion of discrimination" under the dormant Commerce Clause must involve "a comparison of substantially similar entities." *Id.* at 298–99.

Therefore, to the extent *City of Philadelphia* and *West* had ever held otherwise decades before—and they had not—they are no longer good law. Here, plaintiffs' concession that they "do not allege that the Amendments and underlying policies are meant to protect local industry," is fatal to their first and second claims under *General Motors* and its progeny. (ECF 30 at 52). This court should dismiss those claims with prejudice for that reason alone.

The balance of plaintiffs' response suffers from the same defects—relying on old caselaw without engaging with the "modern" cases that have superseded them. Plaintiffs thus cite cases from 1891, 1951, 1978, 1949, and 1911 to argue that any restriction that "disproportionally impacts out-of-state citizens" is unconstitutional under the dormant Commerce Clause, regardless of any actual discrimination between plaintiffs and substantially similar Oregon economic interests. (*See* ECF 30 at 55). But those cases bear no relevance here. Aside from the fact that plaintiffs do not support their conclusory assertion that the 2022 amendments

Page  24 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO
              DISMISS

"disproportionally impact[] out-of-state citizens" with adequate factual allegations, that is not the test. To state a Section 1983 claim under the dormant Commerce Clause, plaintiffs must plausibly allege that the 2022 amendments treat *them* differently than "similarly situated" Oregon economic interests. *Gen. Motors Corp.*, 519 U.S. at 310. Plaintiffs cannot do so—indeed, they concede as much. (ECF 30 at 52).

Plaintiffs' concession is well taken. As explained previously, the 2022 amendments would not allow an Oregon entity to build a facility in Portland that plaintiffs would be prohibited from building. They would not allow an Oregon entity to import or export fuel through Portland that plaintiffs would be prohibited from importing or exporting. They would not allow an Oregon entity to buy or sell fuel in Portland that plaintiffs would be prohibited from buying or selling. And they would not allow an Oregon entity to store fuel in Portland that plaintiffs would be prohibited from storing.[13] Plaintiffs do not dispute any of this. Therefore, as the Supreme Court held in *General Motors*, plaintiffs have failed to state a claim of discrimination under the dormant Commerce Clause. 519 U.S. at 298, 300 (requiring comparison of similar entities in a single market).

Finally, plaintiffs' "undue burden" argument under the *Pike* balancing test—which is the basis of their second dormant Commerce Clause claim—similarly misses the point. (*See* ECF 30 at 56-57). Indeed, plaintiffs cite no cases, aside from *Pike* itself, to support that argument. *See id*. Instead, they argue that the 2022 amendments are not rationally related to legitimate local interests because "those local benefits are illusory" and do not further "earthquake safety." *Id*. Aside from having no merit, those arguments are irrelevant to plaintiffs' *Pike* claim.

---

[13] To the extent plaintiffs' arguments rely on discrimination or preference to Oregon consumers of fuel, such arguments neither relate to plaintiffs nor are supported by the factual allegations. Most notably, plaintiffs are not consumers or end users of fuel. However, if they were, there is no evidence that the 2022 amendments favor Oregon end users or consumers of fuel compared to out-of-state consumers. There are no requirements that stored fuel be used in Oregon. There are no obligations to prioritize distribution of stored fuel for use in Oregon markets.

Page  25 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO
                  DISMISS

As explained above, even under the "undue burden" theory, plaintiffs must plead specific facts showing that, although facially neutral, "an examination of [the 2022 amendments'] practical effects in operation would disclose purposeful discrimination against out-of-state businesses" versus their in-state competitors. *Nat'l Pork Producers Council*, 598 U.S. at 379. A complaint that fails to do so is subject to dismissal for failure to state a claim.[14] *Rosenblatt*, 940 F.3d at 452; *see also Nat'l Pork Producers Council*, 6 F.4th at 1033-34 (holding that, although complaint "plausibly alleged" that state law "will have dramatic upstream effects and require pervasive changes to … industry nationwide," it was properly dismissed because "it has not stated a violation of the dormant Commerce Clause under our existing precedent."). Plaintiffs do not even attempt to satisfy that first element.

Here, the FAC contains no "specific facts" plausibly showing that the 2022 amendments impose a substantial and discriminatory burden on interstate commerce. *Rosenblatt*, 940 F.3d at 452. Plaintiffs' argument that the 2022 amendments' "local benefits are illusory" is therefore irrelevant. In any event, as the Ninth Circuit recently explained, when faced with a motion to dismiss under FRCP 12(b)(6), the court *presumes* that the law serves a legitimate local interest, and it is up to the complaint to "plausibly allege[] otherwise":

> Even if the complaint alleges facts showing that the local benefits claimed by the city are all illusory or illegitimate, it must also plausibly allege the ordinance places a 'significant' burden on interstate commerce [within the meaning of *Pike*]. … And, contrary to Rosenblatt's contention, we presume the law serves the city's legitimate interests; it is Rosenblatt's burden to plausibly allege otherwise.

*Rosenblatt*, 940 F.3d at 452 (citations omitted). To do so, the plaintiff must plausibly negate any "putative local benefits" of the law being challenged, not just its "actual benefits."

---

[14] In addition to being a discriminatory burden, the alleged burden must be substantial, doing more than just "disrupt[ing] the existing practices of some industry participants" or potentially "lead to higher consumer prices." *Nat'l Pork Producers*, 598 U.S. at 385.

Page  26 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

*Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1155 (9th Cir. 2012) (emphasis in original).

Aside from not plausibly alleging a significant discriminatory burden, the FAC does not plausibly allege that the 2022 amendments have no putative local benefits to the City. In addition to the earthquake-safety rationale discussed by the parties, the City has an inherent interest in how its limited supply of industrial land is used. It is not irrational for the City to want to cap the size of its bulk fossil-fuel terminals or to limit the number of fossil-fuel transloading facilities in the City. Among numerous potential benefits, doing so leaves the land available for other uses, limits pollution and nuisances caused by traffic coming in and out of terminals or transloading facilities, and ensures that existing roads and port facilities are not overtaxed. Those benefits readily pass rational-basis scrutiny.[15]

As the Ninth Circuit has cautioned, "[i]n most dormant Commerce Clause cases, it is not the role of the courts to determine the best legislative solution to a problem." *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1156. At heart, plaintiffs are upset that the City will not allow the unlimited future expansion of bulk fossil-fuel terminals in Portland. But the dormant Commerce Clause does not require that Portland—or any other town in the United States—serve as a limitless warehouse and distribution center for plaintiffs' preferred products, whether those products be widgets, pigs, or fossil fuel. *See Spoklie*, 411 F.3d at 1059 ("That a particular service … appeals to out-of-staters, however, does not impose on states an obligation to permit it."). What the dormant Commerce Clause requires is that the City not discriminate between similarly situated in-state and out-of-state businesses in the same market, either facially or in fact. The

---

[15] And deference to local judgment is at a maximum when a party, "under the guise of the Commerce Clause," challenges what "is both typically and traditionally a local government function"—like zoning or land use. (ECF 17 at 36–37 (quoting *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 343 (2007)); *see also Rosenblatt*, 940 F.3d at 452 ("Land use regulations are inherently local" and "are not a significant burden on interstate commerce" under *Pike* even if they might "disappoint [entities] from out of state.").

Page  27 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

2022 amendments readily pass that test, and this court should therefore dismiss plaintiffs' first and second claims with prejudice.

**C.** **The FAC fails to state a claim under the Foreign Commerce Clause.**

Plaintiffs' third claim alleges that the 2022 amendments violate the Foreign Commerce Clause, which gives Congress the authority to "regulate commerce with foreign nations." (ECF 11, ¶ 92). Here again, plaintiffs fail to allege sufficient facts to state a claim.

*1.*    *Plaintiffs do not plausibly allege an injury to their rights secured by the Foreign Commerce Clause.*

As explained previously, to state a claim of a constitutional Foreign Commerce Clause violation under Section 1983, plaintiffs must plausibly allege an injury to *their* rights as *secured by the Foreign Commerce Clause*. They do not do so, and this court should dismiss their third claim for that reason alone.

The Foreign Commerce Clause is intended to protect "federal uniformity" with respect to trade with foreign nations. *Wardair Canada, Inc. v. Fla. Dep't of Revenue*, 477 U.S. 1, 8 (1986). To state a Section 1983 claim that the City has violated their rights under that clause, therefore, plaintiffs muse plausibly allege that the 2022 amendments injure their ability to engage in trade with foreign nations. They have not done so.

The FAC nowhere alleges that any plaintiff currently engages in, or imminently intends to engage in, foreign commerce through Portland—let alone plausibly alleges any injury *tied to an impediment on foreign commerce* imposed by the 2022 amendments. (*See* ECF 11, ¶¶ 62 –67, 98) (plaintiffs' alleged injuries). The closest allegation in the FAC related to an impediment on foreign commerce is the general assertion that plaintiffs are harmed because the 2022 amendments supposedly eventually "will throttle the transport of fossil fuel to and from other states and countries," (ECF 11, ¶ 98). However, this allegation is entirely general and unsupported by any factual allegations regarding the transport of fossil fuel to and from other

Page  28 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

countries through Portland. This does not plausibly state a claim under the Foreign Commerce Clause. *See Turner*, 788 F.3d at 1210.

2.   *Plaintiffs cannot show that any congressional statute pertaining to foreign commerce preempts the 2022 amendments.*

Moreover, as the Supreme Court has long held, the dormant Foreign Commerce Clause "only operates where the Federal Government has not spoken" on an issue involving foreign commerce. *Wardair Canada, Inc.*, 477 U.S. at 12. But when, as here, a plaintiff alleges that the federal government *has spoken* on an issue involving foreign commerce, the question becomes one of simple statutory preemption—that is, did the federal government intend to "preempt all state regulation" in the relevant area. *See id*. at 6, 12–13 (holding that, because "the Federal Government has not remained silent" on the issue in the case, "there is no need for us to consider" whether "the Foreign Commerce Clause would invalidate Florida's tax" absent that federal action).

As the Supreme Court explained in *Wardair*, it would turn the Foreign Commerce Clause analysis "entirely upside down to apply it where the Federal Government has acted, and to apply it in such a way as to *reverse* the policy that the Federal Government has elected to follow." *Id*. at 12 (emphasis in original). The Clause protects Congress's ability to "speak[] with one voice when regulating commercial relations with foreign governments," but the Court has "never suggested … that the Foreign Commerce Clause *insists* that the Federal Government speak with any particular voice." *Id*. at 13 (emphasis in original).

Thus, in *Wardair*, the plaintiff was a Canadian airline challenging a Florida tax on jet fuel, arguing that it violated the Foreign Commerce Clause because it allegedly contravened Congress's intent as expressed in the Federal Aviation Act and other provisions of federal law. *Id*. at 3, 5–6, 9–10. Although not framed that way by the plaintiff, the Court explained that this claim boiled down to a simple "preemption argument":

Page  29 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

> [W]e have consistently emphasized that the first and fundamental inquiry in any
> pre-emption analysis is whether Congress intended to displace state law, and
> where a congressional statute does not expressly declare that state law is to be
> preempted, and where there is no actual conflict between what federal law and
> state law prescribe, we have required that there be evidence of a congressional
> intent to pre-empt the specific field covered by the state law.

*Id*. at 5–6. Looking at the Federal Aviation Act, the Court found "no indication that Congress wished to preclude state sales taxation of airline fuel, but, to the contrary, the Act expressly permits States to impose such taxes." *Id*. at 6. The same was true of the other federal provisions cited by the plaintiffs. *See id*. at 9–13. The Court therefore rejected the plaintiff's Foreign Commerce Clause arguments.

Here, as explained in the City's Motion, the FAC fires a volley of statutory grapeshot that, plaintiffs allege, shows Congress's intent to bar local laws like the 2022 amendments. (*See* ECF 17 at 46). But, as explained in the City's Motion, none of the statutes plaintiffs cite reveals any "specific indications of congressional intent" to bar the City from adopting laws like the 2022 amendments. *See id*. On the contrary, land use is a quintessential local activity, and plaintiffs' FAC and response point to no congressional intent—let alone "specific" congressional direction—to override that longstanding authority. *See Warth*, 422 U.S. at 508 n. 18 ("zoning laws and their provisions … are peculiarly within the province of state and local legislative authorities."); *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 44 (1994) ("regulation of land use [is] a function traditionally performed by local governments"); *FERC v. Mississippi*, 456 U.S. 742, 767 n. 30 (1982) ("regulation of land use is perhaps the quintessential state activity"). Plaintiffs cannot show that federal law preempts the City's land-use rules for BFFTs, or that Congress has specifically directed that cities must allow unlimited future growth in fossil-fuel terminals.

In their Response, plaintiffs concede that they must show that the 2022 amendments "contravene[] specific indications of congressional intent." (ECF 30 at 58). But instead of

Page  30 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO
              DISMISS

discussing the statutes cited in their FAC and trying to show how they supposedly preempt the 2022 amendments, plaintiffs point to a nonbinding district-court opinion in *Levin Richmond Terminal Corp. v. City of Richmond*, 482 F. Supp. 3d. 944 (N.D. Cal. 2020), and argue that it is "directly on point" and "virtually identical" to this case. (*See* ECF 30 at 58-61). But aside from not being binding on this court, *Levin Richmond* is readily distinguishable.

The plaintiffs in that case operated a marine terminal "for shipment overseas" of coal and petcoke.  *Id*. at 952, 960. That terminal was the only "coal and petcoke bulk handling facility" for overseas export in the Bay Area. *Id*. In 2015, the city of Richmond adopted an ordinance that banned all "coal and petcoke storage and handling" anywhere in the city. *Id*. at 952–53. The plaintiffs were given three years to comply with the ordinance, which effectively banned their export business. *Id*. at 953. The plaintiffs sued the city, alleging *inter alia* that its ban on plaintiffs' export business violated the Foreign Commerce Clause. *Id*. The city moved to dismiss for failure to state a claim, but the district court rejected the city's motion. *Id*.

In doing so, the court engaged in little analysis, but concluded that, together, two federal statutes, 30 U.S.C. § 21a and 42 U.S.C. § 13367, contained "specific indications of Congressional intent to regulate the overseas trade of commodities like coal and petcoke." *Id*. at 957–58. The court accordingly concluded that, by alleging that the city's ordinance had banned plaintiffs' "shipment of coal and petcoke overseas to customers in Europe, Australia, and Asia," the plaintiffs had stated a plausible claim under the Foreign Commerce Clause.

Contrary to plaintiffs' assertion, therefore, *Levin Richmond* is not "directly on point"— far from it. First, unlike the plaintiffs in that case, plaintiffs here do not allege that any of them operates *any* facility for *overseas export* in Portland. Their Foreign Commerce Claim fails on that basis alone.

Second, unlike the city in *Levin Richmond,* the City here has not *banned* plaintiffs' (nonexistent) foreign exports. Rather, the 2022 amendments simply place limits on the

Page  31 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO
                      DISMISS

hypothetical future expansion of BFFTs in the City. Plaintiffs' Foreign Commerce Claim fails for that additional, independently sufficient basis.

Finally, the two statutes that the district court relied on in *Levin Richmond* do not apply here. 42 U.S.C. § 13367 expressly pertains only to "exports of coal mined in the United States." Here, the FAC does not allege that *any* plaintiff exports, or has any imminent plans to export, any "coal mined in the United States" through Portland. While the district court in *Levin Richmond* cited 30 U.S.C. § 21a, the court identified no language in that statute that includes a "specific indications of Congressional intent to regulate the overseas trade" of fossil fuels. 482 F. Supp. 3d 944, 957.

In sum, plaintiffs' reliance on *Levin Richmond* fails for numerous reasons. Even if that case were binding on this court—and it is not—plaintiffs cannot show that they have pleaded a valid claim under the Foreign Commerce Clause. On the contrary, as explained in the City's Motion, none of the federal statutes cited in plaintiffs' third claim contains any language, let alone any "specific expression of congressional intent," to preempt the 2022 amendments. This court should therefore dismiss their third claim with prejudice.

**D.    The FAC fails to state a claim under the Interstate Commerce Commission Termination Act of 1995 ("ICCTA").**

As with the Foreign Commerce Clause, plaintiffs' ICCTA argument relies entirely on a nonbinding, distinguishable decision from a district court in California. (ECF 30 at 61-63). Only by misstating the requirements of the 2022 amendments are Plaintiffs able to shoehorn their arguments into something similar to *Levin Richmond*. However, plaintiffs are not rail carriers, agents of rail carriers, or controlled by rail carriers. Quite simply plaintiffs and their use of transloading facilities in Portland do not fall within the preemption of the ICCTA.

///

///

Page  32 –     DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

In describing its own jurisdiction with respect to transloading, the Surface Transportation Board ("STB")[16] has explained, "jurisdiction extends to rail-related activities that take place at transloading . . . facilities *if the activities are performed by a rail carrier, the rail carrier holds out its own service through a third party that acts as the rail carrier's agent, or the rail carrier exerts control over the third party's operations.*" *Valero Refining Co.—Petition for Declaratory Order*, FD 36036, 2016 WL 5904757, at *1, 3 (STB Sept. 20, 2016) (STB found no jurisdiction with respect to noncarrier seeking to install an off-loading facility that "would have the capacity to receive 50-car unit trains of crude oil twice per day"); *see also SEA-3, Inc.—Petition for Declaratory Order*, FD 35853 (STB Mar. 17, 2015) (STB found no jurisdiction where "it appears that the only regulatory action at issue in this case is a local government's participation in zoning litigation over the expansion of a non-carrier facility"); *Washington & Idaho Railway—Petition for Declaratory Order*, FD 36017 (STB Mar. 17, 2017) ("Federal preemption does not apply to a transload facility . . . where the activities are not being performed by or on behalf of a rail carrier, even if those activities fall 'within the broad definition of transportation.'" (quoting *N.Y. & Atl. Ry. v. STB*, 635 F.3d 66, 74 (2d Cir. 2011)).

Here, no plaintiff has alleged they are a rail carrier or are performing any transportation-related activities on behalf of a rail carrier. *See Lighthouse Res. Inc. v. Inslee*, 2018 WL 6505372, *6-7 (W.D. Wash. Dec. 11, 2018). *Levin Richmond*, is distinguishable because it presented a unique set of facts where coal was transported on rail lines, one of which was owned by a wholly owned subsidiary of the company that owned the transloading facility. 482 F. Supp. 3d at 961. No similar unique circumstances are alleged here. *Id.*

///

---

[16] Notably, the preemption provision of the ICCTA preempts state law with respect to areas where the STB has exclusive jurisdiction. 49 U.S.C. § 10501(b). Moreover, the Ninth Circuit looks to decisions of the STB for "guidance on the scope of ICCTA preemption." *Ass'n of Am. R.R.s v. South Coast Air Quality Mgmt.*, 622 F.3d 1094, 1097 (9th Cir. 2010).

Page 33 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiffs are non-carriers. Plaintiffs do not perform services for rail carriers. Plaintiffs are not the agents of rail carriers. And plaintiffs are not controlled by rail carriers. Further the 2022 amendments do not engage in any regulation or management of rail transportation because they simply do not impact rail transportation or any existing rail infrastructure. Instead, the 2022 amendments impact future, hypothetical uses of land in Portland owned and operated by non-carriers. With such facts, plaintiffs do not state a claim for preemption under the ICCTA, and the court should dismiss plaintiffs' fourth claim with prejudice.

**E.    *Plaintiff's cursory substantive Due Process arguments fail to state a claim.***

Plaintiffs begin by conceding that the City has a legitimate interest in earthquake safety, and, in particular, preventing significant spills of fossil fuel in the event of an earthquake. (ECF 30 at 63-64). Plaintiffs' argument is limited to whether the 2022 amendments do enough to advance this legitimate interest. However, the potential success or failure of the City's policy is not the test for substantive Due Process.

Notably, plaintiffs appear to ignore the highly deferential standard applied by the courts when a government action implicates not fundamental rights, but only economic interests. In such instances, a plaintiff's complaint will not succeed "if it is 'at least fairly debatable' from the plaintiff's allegations that the challenged official conduct was 'rationally related to a legitimate governmental interest.'" *Tanner v. Hightower*, 2016 WL 7974658, *11 (C.D. Cal. Dec. 13, 2016) (quoting *Halverson v. Skagit Cty.*, 42 F.3d 1257, 1262 (9th Cir. 1994)). And, in fact, it is not required that the City's action actually advance its interest in earthquake safety so long has it could have had a legitimate reason for acting as it did. *Id*.

Here, the FAC does not challenge the reliability of the evidence that the City relied upon in considering the impacts of earthquakes on large amounts of fossil fuels stored in BFFTs. *Cf. Levin Richmond*, 482 F. Supp. 3d at 964. Instead, plaintiffs object to the policy the City chose to address its concerns. However, even if alternative or better policies may exist, such reality is

Page  34 –    DEFENDANT CITY OF PORTLAND'S REPLY IN SUPPORT OF MOTION TO DISMISS

insufficient to demonstrate that the City's approach—limiting the size of large fossil fuel storage tanks—was not rationally related to the concededly legitimate interest in earthquake safety. "[I]t is not the Court's role to second-guess state conduct simply because plaintiffs present an alternative method of pursuing the state's interest." *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1253 (D. Or. 2021). Because plaintiffs have failed to allege facts sufficient to state a substantive Due Process claim, the court should dismiss plaintiffs' fifth claim with prejudice.

## IV.    Conclusion

Plaintiffs lack standing to obtain the prospective relief they seek and have failed to allege adequate facts to state a claim for relief. For these reasons, as discussed above and in the City's Motion, the court should grant the City's motion and dismiss plaintiffs' claims with prejudice.

DATED:  September 1, 2023

Respectfully submitted,

*/s/ Naomi Sheffield*
DENIS M. VANNIER, OSB No. 044406
Senior Deputy City Attorney
Denis.Vannier@portlandoregon.gov
NAOMI SHEFFIELD, OSB No. 170601
Senior Deputy City Attorney
Naomi.Sheffield@portlandoregon.gov

*Of Attorneys for Defendant City of Portland*

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047