**Joshua M. Sasaki, P.C.**, OSB No. 964182
josh.sasaki@millernash.com
**Steven G. Liday**, OSB No. 075975
steven.liday@millernash.com
**Christopher Riley**, OSB No. 211614
christopher.riley@millernash.com
MILLER NASH LLP
1140 SW Washington St, Ste 700
Portland, OR 97205
Telephone: 503.224.5858
Facsimile: 503.224.0155

Attorneys for Plaintiffs
State of Montana; Western Energy Alliance;
Pacific Propane Gas Association; Idaho
Petroleum Marketers and Convenience Store
Association, Inc.; and Christensen, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| STATE OF MONTANA; WESTERN ENERGY ALLIANCE, a Colorado nonprofit corporation; PACIFIC PROPANE GAS ASSOCIATION, a Washington nonprofit corporation; IDAHO PETROLEUM MARKETERS AND CONVENIENCE STORE ASSOCIATION, INC., an Idaho nonprofit corporation; and CHRISTENSEN, INC., a Washington Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF PORTLAND,<br><br>Defendant. | CASE No. 3:23-cv-00219-YY<br><br>**PLAINTIFFS' OBJECTIONS TO FINDINGS AND RECOMMENDATIONS** |

Page 1 -   Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), plaintiffs respectfully submit the following objections to Magistrate Judge Youlee Yim You's Findings and Recommendations ("F&R"), ECF 53, granting in part defendant's motion to dismiss, ECF 17.

## I.    INTRODUCTION

In this action, plaintiffs challenge the constitutionality of zoning code amendments and binding policies adopted by the City of Portland (the "City") that prohibit new fossil-fuel transportation and storage facilities in Portland, except for infrastructure that will serve local end users and consumers.

Plaintiffs allege in their amended complaint (ECF 11) that these enactments violate the dormant Commerce Clause of the United States Constitution in two respects: first, the preference of local consumers/end users of fuel constitutes prohibited discrimination of interstate commerce, and second, the prohibition on transportation infrastructure to limit the downstream, out-of-state use of fossil fuels is undue burden on interstate commerce. Plaintiffs also allege that the zoning code violates substantive due process because it undermines, not advances, its stated safety objectives.[1]

The City moved to dismiss the case on two grounds: (1) that plaintiffs lack standing, and (2) that the amended complaint fails to state claims for which relief can be granted.

---

[1] The amended complaint also sets out claims alleging violation of the Foreign Commerce Clause and preemption by the Interstate Commerce Commission Termination Act of 1995. Plaintiffs do not provide further comment on these two claims here.

Page 2 -   Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

ECF 17. In the F&R, Judge You recommends denying the motion to dismiss for lack of standing, but granting the motion to dismiss for failure to state a claim. ECF 53 at 27.[2]

Plaintiffs object to Judge You's recommendation of dismissal, especially regarding plaintiffs' dormant Commerce Clause and substantive due-process claims. In addition to the reasons set out in plaintiffs response brief, the F&R analysis concerning these claims should be rejected because:

1. **Plaintiffs can assert a violation of the dormant Commerce Clause based on discrimination against out-of-state consumers/end users of fuel.** The F&R incorrectly opines that plaintiffs cannot challenge discrimination against out-of-state end users of fuel because plaintiffs are, or represent, fuel producers, distributors, and retailers. The Supreme Court, however, has expressly rejected such a contention and stated on multiple occasions that parties indirectly harmed by discrimination of interstate commerce can bring a dormant Commerce Clause challenge even if not directly subject to the offending law. In fact, virtually all the landmark cases involving preferential treatment for in-state consumers were brought by commercial entities and/or states—not out-of-state end users. And even if such a limitation existed, plaintiffs would still be able to assert a claim based on discrimination against end users because they are, represent, and/or act on behalf of end users of fuel.

2. **The United States Supreme Court did not overrule *Pike* balancing claims in *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023).** In concluding otherwise, the F&R relies on a section of the Court's opinion in *National Pork* that was endorsed

---

[2] Judge You further recommended that plaintiffs' motion for partial summary judgment, ECF 34, be denied as moot. ECF 53 at 28.

Page 3 -   Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

by only three justices. The concurring/dissenting opinions expressly state that the other six justices affirmed the continuing validity of *Pike* balancing claims.

       3.      **Plaintiff's due-process claim is not based on arguments that alternative policies would better accomplish the stated safety objectives for the zoning code amendments.** Rather, plaintiffs allege that the amendments are wholly unrelated to their purported safety objectives because they will increase, not decrease, the risks posed by fuel-transportation terminals.

For these reasons, as set out in full below, this court should reject the F&R analysis recommending that the amended complaint be dismissed for failing to state a claim and deny the City's motion in its entirety.

## II.    STANDARD OF REVIEW

The Magistrate Act provides that the district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a party objects to any portion of the magistrate judge's report, the district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations." *Id*.

Page 4 -   Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

### III. ARGUMENT

A. **The amended complaint states a valid dormant Commerce Clause claim for relief based on the City's intentional discrimination against out-of-state end users and consumers of fuel.**

In their first claim for relief, plaintiffs allege that the zoning amendments and related binding policies—i.e., the "Amendments,"[3] "2015 Resolution,"[4] and "Policy 6.48"[5]—violate the dormant Commerce Clause. ECF 11, ¶¶ 68–82. Plaintiffs allege that these enactments violate the dormant Commerce Clause because they restrict unwanted commerce based on who is ultimately using the fuel being stored and transported. ECF 11, ¶¶ 72–74. Plaintiffs allege that these enactments fall squarely within two categories of regulations that have been repeatedly invalidated under the dormant Commerce Clause: (1) limitations on unwanted commerce that

---

[3] The City first adopted the Fossil Fuel Terminal Zoning Amendments (the "Amendments") on December 14, 2016, in Ordinance No. 188142. ECF 31-5; ECF 31-6. Following two appeals to the Oregon Land Use Board of Appeals, the City readopted the Amendments on December 18, 2019, in Ordinance No. 189807 (ECF 31-7, ECF 31-8, ECF 31-9), and again on August 24, 2022, in Ordinance 190978 (ECF 31-10, ECF 31-11, ECF 31-12).

[4] On November 12, 2015, the City adopted Resolution 37168, which enacted a binding policy that the City will "[o]ppose expansion of infrastructure whose primary purpose is transporting or storing fossil fuels in or through Portland or adjacent waterways." (the "2015 Resolution"). ECF 31-1.

[5] In June 2016, the City adopted its current comprehensive plan, including Policy 6.48 (Fossil Fuel Distribution), which states that the City will "[l]imit fossil fuel distribution and storage facilities to those necessary to serve the regional market." ("Policy 6.48"). ECF 31-4; ECF 31-5.

Page 5 -   Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

disproportionately impacts interstate trade and/or protects local citizens from the restrictions,[6] and (2) preferential access for local consumers/end users to goods and resources.[7]

The F&R does not address this Supreme Court precedent or the City's intentional discrimination against out-of-state fuel consumers/end users. Rather, the F&R adopted the City's erroneous position that plaintiffs cannot maintain a dormant Commerce Clause claim based on discrimination of out-of-state end users/consumers of fuel because "plaintiffs are or represent fossil fuel producers, distributors, wholesalers, and retailers." ECF 53 at 16. Thus, the F&R finds, "the analysis must compare plaintiffs to Oregon-based fossil fuel producers, distributors, or retailers to determine whether the [Amendments are] discriminatory." *Id*. These findings are mistaken, however, in both the law and underlying factual premise.

> **1. Trade organizations, businesses, and states can assert challenges under the dormant Commerce Clause based on discrimination of out-of-state consumers and end users.**

The finding in the F&R that parties may only challenge laws under the dormant Commerce Clause to the extent they are the subject of the discrimination at issue is contrary to numerous Supreme Court cases. In fact, in *General Motors Corp. v. Tracy*, 519 U.S. 278 (1997), the Supreme Court unequivocally rejected such a contention, stating that a "cognizable injury

---

[6] *City of Philadelphia v. New Jersey*, 437 U.S. 617, 628 (1978); *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Res.*, 504 U.S. 353, 363 (1992); *Chemical Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 337 (1992); *Environmental Tech. Council v. Sierra Club*, 98 F.3d 774, 778 (4th Cir. 1996); *In re Southeast Ark. Landfill, Inc.*, 981 F.2d 372, 373 (8th Cir. 1992).

[7] *H. P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 526 (1949); *West v. Kansas Nat. Gas Co.*, 221 U.S. 229, 249 (1911); *Western Oil & Gas Ass'n v. Cory*, 726 F.2d 1340, 1345 (9th Cir 1984), *aff'd*, 471 U.S. 81 (1985); *American Trucking Ass'ns v. Whitman*, 437 F.3d 313 (3rd Cir. 2006); *Kassel v. Consolidated Freightways Corp. of Del.*, 450 U.S. 662, 677–678, 101 S Ct 1309 (1981).

Page 6 -   Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a State ultimately discriminates[.]" *Id.* at 286. Thus, the Supreme Court found that General Motors could challenge the law at issue, based on allegations of discriminatory taxation between in-state and out-of-state sellers of natural gas, even though the company was not itself a natural gas company subject to the law. *Id.* at 287.[8]

In fact, almost all cases overturning laws based on preferential treatment of in-state end users were brought by business, trade organizations, and governmental bodies—not out-of-state consumers. *E.g., New England Power Co. v. New Hampshire*, 455 U.S. 331, 333 (1982) (power company successfully challenged order to not sell its hydroelectricity to consumers outside the state based on the preferential treatment for in-state energy consumers); *City of Philadelphia v. New Jersey*, 437 U.S. 617 (1978) (city and in-state landfill operators successfully challenged New Jersey law indefinitely prohibiting acceptance of waste from outside the state based on discrimination in favor of in-state users of disposal service); *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Nat. Res.*, 504 U.S. 353 (1992) (in-state landfill successfully challenged law restricting collection of waste generated outside the county based on preferential treatment of the local service users); *Pennsylvania v. West Virginia*, 262 U.S. 553, 592 (1923), *aff'd*, 263 U.S. 350 (1923) (two states successfully challenged West

---

[8] The opinion sets out earlier Supreme Court cases exemplifying this rule, citing *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263 (1984) (wholesalers successfully challenged law based on discrimination between in-state and out-of-state alcohol producers); *Fulton Corp. v. Faulkner*, 516 U.S. 325 (1996) (stockholders asserted challenge based on discrimination directed at stock issuers); *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186 (1994) (in-state milk dealers challenged tax and subsidy law discriminating against out-of-state milk producers).

Page 7 -   Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

Virginia law that required pipeline operators to give priority to in-state natural gas consumers); *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 576 (1986) (distiller successfully challenged lowest-price-affirmation law requiring alcohol to be sold at a price no higher than the lowest price in other states based on law's discriminatory preferential treatment for in-state consumers over their out-of-state counterpart).

The Supreme Court's opinion in *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564 (1997) is particularly illustrative. "This case involve[d] an issue that [the Court] [had] not previously addressed—the disparate real estate tax treatment of a nonprofit service provider based on the residence of the consumers that it serves." *Id.* at 572. Although the tax at issue was imposed on nonprofit organizations, the law was found to violate the dormant Commerce Clause because it operated to benefit in-state consumers, i.e., by creating an incentive for nonprofit organizations to direct their services thereto. *Id.* at 578. Thus, while the plaintiff in the case was an in-state camp operator, the basis for its dormant Commerce Clause challenge was the disparate treatment of in-state and out-of-state consumers.[9]

*H. P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525 (1949) is also on point. In that case, plaintiff was a milk distributor with three facilities in New York who had been denied a permit for a fourth depot because it would be used to serve out-of-state consumers. *Id.* at 26. As in *Camps Newfound/Owatonna, Inc.*, while the governmental action at issue was directed at a

---

[9] *Id.* at 580–81 ("With respect to those businesses—like petitioner's—that continue to engage in a primarily interstate trade, the Maine statute therefore functionally serves as an export tariff that targets out-of-state consumers by taxing the businesses that principally serve them. As our cases make clear, this sort of discrimination is at the very core of activities forbidden by the dormant Commerce Clause.").

Page 8 -   Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

business organization, the law was found to violate the dormant Commerce Clause because it was intended to benefit in-state consumers. *H. P. Hood & Sons, Inc.*, 336 U.S. at 536 (outlining past precedence for principle that states may not "regulate the interstate business to the advantage of the local consumers[.]")

Here, the plaintiff and plaintiff members with operations in the City occupy an identical position to the plaintiffs in *Camps Newfound/Owatonna, Inc.* and *H. P. Hood & Sons, Inc.* While the City's Amendments and binding policies are directed at their facilities and operations, the unlawful discrimination at issue in the dormant Commerce Clause claim is directed at the out-of-state end users and consumers they serve. Moreover, unlike the plaintiffs in the cases above, plaintiffs in this case are, represent, and act on behalf of out-of-state end users targeted by the discriminatory legislation—and thus, plaintiffs are injured directly and indirectly by the discrimination at issue.

### 2. The cases cited in the F&R—originally provided and mischaracterized in the City's brief—are not on point.

In support of the errant holding that plaintiffs can only challenge the Amendments and underlying policies based on discrimination between them and "Oregon-based fossil fuel producers, distributors, or retailers," the F&R cites to three cases for the proposition that a plaintiff can only base a dormant Commerce Clause on discrimination directed at them. ECF 53 at 16. These cases, however, do not state or support this principle.

First, the language cited in *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1088 (9th Cir. 2013) merely recites the well-known standard that in determining whether a law is discriminatory, a court should compare similarly situated entities. The case does not address who can make an argument of discrimination between such entities, nor in any way

Page 9 -   Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

implies that plaintiffs can only assert a dormant Commerce Clause challenge based on discrimination of entities like them.

*National Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521 (9th Cir. 2009), addresses the same principle. LensCrafters and other plaintiffs argued that California statutes and regulations were unconstitutional "protectionist measures because they favor in-state optometrists and ophthalmologists at the expense of opticians and optical companies head-quartered out of state." *Id.* at 523. The Ninth Circuit held that the laws were not discriminatory because "opticians are not similarly situated to optometrists and ophthalmologists" and thus disparate treatment was allowed. *Id.* at 525. The Ninth Circuit did not hold that plaintiffs were limited to arguments about in-state entities similarly situated to themselves. The language in the opinion referencing entities similarly situated to LensCrafters was not a departure from the clear precedent above, but a reflection of LensCrafters' claim that it was the subject of the discrimination at issue. *See National Pork*, 598 U.S. at 373-74.[10]

Finally, in *Building Trades Council v. City of Portland*, 289 Or. App. 739 (2018), which concerns the original version of the Amendments at issue in this case, the Oregon Court of Appeals addressed the same standard as the other two cases above, i.e., that discrimination must be determined by evaluating "substantially similar entities." *Id.* at 746. The language quoted in the F&R does not hold that the petitioners in that case were limited to the arguments they could bring, but based on a misunderstanding of those arguments. The court stated that it "understood"

---

[10] Cautioning that "the language of an opinion is not always to be parsed as though we were dealing with language of a statute. Instead, we emphasize, our opinions dispose of discrete cases and controversies and they must be read with a careful eye to context." (internal citations omitted).

Page 10 -   Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

petitioners' discrimination arguments to be based on a comparison of the treatment of "out-of-state economic sellers" in favor of "in-state purchasers and end users." *Id.* at 747. Based on this misconception,[11] the court reversed the Oregon Land Use Board of Appeals' holding that the Amendments violated the dormant Commerce Clause because "that is not an apt comparison of purportedly 'substantially similar entities[.]'" *Id.*[12]

In short, the F&R identifies no legal authority for a rule that plaintiffs are not allowed to challenge the Amendments and underlying policy based on discrimination between local and out-of-state consumers and end users.

### 3. Plaintiffs and their members are end users of fuel.

Even if such a rule existed, the recommendation in the F&R for dismissal of plaintiffs' first claim would still be flawed because plaintiffs and their members are, represent, and act on behalf of major end users of fuel.

As set out in the amended complaint, plaintiff Christensen, Inc., is one of the largest distributors of fuels, lubricants, and propane on the West Coast, serving over 10,000 retail fuel, commercial, industrial, and fleet customers. ECF 11, ¶ 7. Usings its fleet of trucks,

---

[11] In fact, appellants had argued on appeal and LUBA had ruled that the Amendments violated the dormant Commerce Clause because they imposed a burden on interstate commerce that adversely affected out-of-state purchasers and end users while shielding local purchasers and end users from those burdens. Thus, the court of appeals' reversal of LUBA's conclusion was based on an incorrect formulation of LUBA's ruling rather than on the ground that LUBA actually ruled and that appellants advanced on appeal.

[12] In an unpublished, nonprecedential opinion, the court of appeals recently denied another dormant Commerce Clause claim in a state land use appeal proceeding (on review of a decision by LUBA). The court, however, did not expressly address the merits of a dormant Commerce Clause claim, but found that petitioners had not established the necessary procedural grounds to allow reconsideration of the holdings in its earlier decision. *Columbia Pac. Bldg. & Constr. Trades Council v. City of Portland*, 330 Or. App. 744, 746-747 (2024).

Page 11 -  Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

Christensen distributes fuel products "to thousands of customers in Portland and the surrounding region[,]" as well as "thousands of customers in eastern Oregon, eastern Washington, and western Idaho." ECF 11, ¶¶ 63(b)–(c). Likewise, Pacific Propane Gas Association's members, including Christensen, rely on trucks to distribute propane products throughout the northwest. ECF 11, ¶¶ 5, 64(c). The Western Energy Alliance "represents 200 member companies engaged in all aspects of environmentally responsible exploration and production of oil and natural gas in the West[,]" all of which consume fuel in their operations. ECF 11, ¶ 4. Finally, the state of Montana, like all states, is a significant consumer of fuel, and acts on behalf of its citizens and in-state businesses in its *parens patriae* capacity—virtually all of which are fuel consumers. ECF 11, ¶ 67.

Accordingly, even under the mistaken legal standard set out in the F&R, plaintiffs would be able to assert a dormant Commerce Clause challenge based on the Amendments' and underlying policies' preferential treatment of local consumers/end users of fuel as compared to end users in other jurisdictions.

### B. The *Pike* balancing test remains an integral part of dormant Commerce Clause analysis.

The F&R also erred with respect to plaintiffs' second dormant Commerce Clause claim (*Pike* balancing claim) in rejecting out of hand plaintiffs' arguments that the Amendments' intentional burden on interstate commerce—purposefully limiting the access and use of fuel by downstream out-of-state/international consumers by blocking the transportation of fuel thereto—outweighs the putative benefits of the Amendments. ECF 53 at 17. The F&R stated that plaintiffs' claim must be "rejected in light of *National Pork's* directions that such 'policy choices usually belong to the people and their elected representatives' and are not valid grounds to

Page 12 -  Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

invalidate a state law under the dormant Commerce Clause absent a showing that there is some discriminatory effect on interstate commerce." *Id.* (quoting *National Pork*, 598 U.S. at 382).

But the section of *National Pork* that this analysis relies on—Part IV-B (pages 380 to 383)—was joined by only two justices,[13] and is therefore not binding precedent.

The concurring/dissenting opinions expressly state that the other six justices affirmed the continuing validity of the *Pike* balancing test for determining whether nondiscriminatory laws violate the dormant Commerce Clause because they are an undue burden on interstate commerce. *See National Pork*, 598 U.S. at 403 (Kavanaugh, J., concurring in part and dissenting in part) ("In today's fractured decision, six Justices of this Court affirmatively retain the longstanding *Pike* balancing test for analyzing dormant Commerce Clause challenges to state economic regulations."); *Id.* at 394–95 (Roberts, C.J., concurring in part and dissenting in part) ("The Ninth Circuit stated that '[w]hile the formant Commerce Clause is not yet a dead letter, it is moving in that direction. Today's majority does not pull the plug. For good reason: Although *Pike* is susceptible to misapplication as a freewheeling judicial weighing of benefits and burdens, it also reflects the basic concern of our Commerce Clause jurisprudence that there be 'free private trade in the national marketplace.'") (internal quotations and citations omitted).[14]

---

[13] Only justices Thomas and Barrett joined Gorsuch in this section of the opinion.

[14] In its motion to dismiss, the City fails to acknowledge that the Supreme Court's express rejection of the Ninth Circuit's characterization of the dormant Commerce Clause, but instead repeatedly quotes the lower court's opinion as binding precedent, which it is not. E.g., ECF 17 at 33 (quoting Ninth Circuit's "dead letter" language, which was subsequently rebuffed in the opinion by Chief Justice Roberts, 598 U.S. at 403).

Page 13 -  Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

Because the F&R declined to apply the principles of *Pike* balancing to plaintiffs' claim, this court should decline to adopt the recommendation of dismissal as to plaintiffs' second dormant Commerce Clause claims.

### C. Plaintiffs' substantive due-process claim.

In recommending dismissal of plaintiffs' substantive due-process claim, the F&R states that plaintiffs were "argu[ing] that other policies or approaches would be better suited to or more effective in achieving that interest." ECF 53 at 26–27 (citing ECF 30 at 57). But what plaintiffs actually argue is that the Amendments were "not only ineffective, but actually detrimental to the City's stated interests." ECF 30 at 57. That is, plaintiffs argue—and continue to argue—that the City's conduct was not rationally related to its legitimate government interest.

On this point, plaintiffs have alleged factual issues as to whether the Amendments serve the interests the City has identified. In the amended complaint, plaintiffs allege that:

> The Amendments also have no rational connection to public safety or protection of environmental resources within the City. The categorical block on new, modern terminals and intermodal infrastructure—unquestionably subject to higher safety standards for withstanding earthquakes and other events compared to older facilities—does not reduce risks from the storage of fuel within the City, but in fact prevents reductions thereof. Likewise, the citywide prohibition on new terminals forces the storage of fuel within the City to remain within a liquefaction zone. Much of the City is not in a liquefaction zone, but under the Amendments, the fuel terminals must stay in their current location. ECF 11, ¶ 116.

At this stage of the proceeding, these allegations must be accepted as true and construed in the light most favorable to plaintiffs. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018) (citation omitted). Accordingly, plaintiffs have sufficiently stated a claim and their due-process claim cannot be dismissed at this stage. *See Levin Richmond Terminal*, 482 F. Supp. 3d at 964 (denying dismissal of a substantive due-process challenge to a city ordinance

Page 14 -  Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205

because "the complaints contain[ed] numerous allegations challenging the reliability and sufficiency of the evidence on which the City purportedly relied in passing the Ordinance").

## IV.  CONCLUSION

For the reasons set out above and in their response and sur-response briefs, plaintiffs respectfully ask that this court deny the City's motion to dismiss in its entirety.

DATED this 11th day of March, 2024.

MILLER NASH LLP

_/s/ Joshua M. Sasaki_

Joshua M. Sasaki, P.C., OSB No. 964182
josh.sasaki@millernash.com
Steven G. Liday, OSB No. 075975
steven.liday@millernash.com
Christopher Riley, OSB No. 211614
christopher.riley@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155

Attorneys for Plaintiffs

Page 15 -  Plaintiffs' Objections to Findings and Recommendations

4886-7764-3434.6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
1140 SW WASHINGTON ST, STE 700
PORTLAND, OR 97205